1998 ND 76

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Johannah WICKS, Defendant and Appellant.**

**Criminal No. 970259.**

Supreme Court of North Dakota.

April 8, 1998.

Patricia L. Burke, State's Attorney, for plaintiff and appellee.

Brenda A. Neubauer, Severin, Ringsak & Morrow, Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Johannah Wicks appealed from the Criminal Judgment of the Burleigh County District Court. We reverse and remand this case for a new trial because Wicks was denied assistance of counsel when the district court excused her appointed counsel on the day of trial.

I

[¶ 2] Johannah Wicks was living with her boyfriend, Kelly Overby, a convicted drug felon. During a March 29, 1996, probation search of Overby's residence, Morton County Deputy Brent Slade found a "snow seal" in a pair of blue jeans in the bathroom. A "snow seal" is a folded piece of paper used to carry powdered drugs. The "snow seal" was given to the designated evidence custodian, Burleigh County Deputy Trent Wangen. The "snow seal" contained a powdered substance that Deputy Wangen believed was methamphetamine.

[¶ 3] Deputy Wangen asked Johannah Wicks if she wanted to talk about the powdered substance. Wicks responded, "it is mine." The North Dakota State Laboratory determined the substance was indeed methamphetamine. Wicks was charged with Possession of a Controlled Substance, a class C felony. N.D.C.C. § 19–03.1–23(6).

[¶ 4] Wicks was represented by her appointed counsel, Robert Martin. Wicks attempted to retain another attorney from Jamestown, North Dakota, but the Jamestown attorney told Wicks he did not have enough time to prepare for the case and told her to stay with Martin.

[¶ 5] A few days before trial, Wicks filed a disciplinary complaint with the Disciplinary Board of the Supreme Court against Martin. Wicks evidently believed the complaint would preserve a record for a later claim of ineffective assistance of counsel. Wicks claimed she did not understand that filing a complaint would make Martin withdraw. But on the day of trial, Martin orally moved to withdraw.

[¶ 6] The State objected to any delay in the trial,

"Your Honor, the defendant has been ... trying to get this matter delayed, continued, however you want to put it. This was simply another action on her part to do that. The State has our witnesses here, the jury is here, and the defendant has put herself in this position.... [S]he obviously knew this might happen. She attempted to retain counsel...."

[¶ 7] Wicks said she, too, would like to go forward but thought Martin would be representing her. Wicks insisted she had no idea the filing of a disciplinary complaint would result in Martin's withdrawal. Wicks remarked, "I didn't know that. They didn't tell me that. I was told for a point of appeal I should have on record that I was dissatisfied because there was no motions filed. And I had asked him to file motions."

[¶ 8] The court asked Wicks if her "drugger" boyfriend was giving her legal advice. The court was referring to the boyfriend's prior convictions for drug related crimes. Wicks admitted he had given her some advice.

[¶ 9] Describing the episode as an "absolutely ridiculous" situation Wicks brought on herself, the district court allowed Martin to withdraw. The court advised Wicks that she would have to represent herself.

[¶ 10] Wicks asked in apparent disbelief, "I am going to have to represent myself? I don't have a clue on what to do, I am going to be found guilty."

[¶ 11] The court replied, "That's probably very likely."

[¶ 12] Because Wicks was representing herself, the State asked to be allowed to negotiate a plea agreement with her. After ten minutes of apparent negotiation, the parties failed to reach a plea agreement. But Wicks and the State evidently discussed the issue of a jury trial, because once the record resumed Wicks was asked whether she wished to waive her right to a trial by jury. Wicks attempted to discuss the waiver with her Jamestown attorney, but the attorney had left the office. The court asked Wicks what she wanted to do and Wicks responded, "[t]o waive the jury trial."

[¶ 13] After a bench trial lasting less than twenty-five minutes, the district court concluded "[t]he evidence establishes by evidence beyond reasonable doubt the defendant is guilty of the charge of possession of controlled substance, namely methamphetamine."

[¶ 14] Wicks was sentenced to three years of commitment to the North Dakota Department of Corrections with two years suspended.

## II

[¶ 15] On appeal, Wicks argues ineffective assistance of counsel, denial of her right to counsel, and abuse of discretion based on the district court's failure to grant a continuance. The dispositive question presented in this appeal is whether Wicks was denied her right to counsel when the district court excused her appointed counsel on the day of trial because of a conflict of interest.

[¶ 16] The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Sixth Amendment right to assistance of counsel was extended to prosecutions in state courts in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (holding the Sixth Amendment right to assistance of counsel is obligatory on the states by section one of the Fourteenth Amendment to the United States Constitution); U.S. Const. amend. XIV, § 1. The North Dakota Constitution includes a similar provision: "In criminal prosecutions in any court whatever, the party accused shall have the right . . . to appear and defend in person and with counsel." N.D. Const. art. I, § 12.

[¶ 17] Our standard of review for a violation of a constitutional right is de novo. *State v. Harmon*, 1997 ND 233, ¶ 16, 575 N.W.2d 635. Denial of the right to counsel at trial requires the automatic reversal of a defendant's conviction, as prejudice is presumed. *State v. McKay*, 234 N.W.2d 853, 856 (N.D.1975). *See Harmon*, 1997 ND 233, ¶ 16, 575 N.W.2d 635 (quoting *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967) for the proposition that denial of right to counsel can never be harmless error). A defendant does have the right to represent herself if she knowingly and intelligently chooses to do so. *Harmon*, 1997 ND 233, ¶ 16, 575 N.W.2d 635.

[¶ 18] A knowing and intelligent waiver of the right to counsel requires an awareness of the "dangers and disadvantages

of self-representation." *Harmon*, 1997 ND 233, ¶¶ 22–23, 575 N.W.2d 635 (quoting *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). The district court must establish on the record the defendant knew what she was doing and her choice to waive representation was made with open eyes. *Id.* The record in this case reveals Wicks was compelled to represent herself in the criminal trial by the convergence of four events: the filing of the disciplinary complaint, the subsequent withdrawal of her appointed attorney, her inability to secure other representation, and the court's refusal to grant a continuance. Although the first event was the catalyst for what followed, it is apparent from this record, the "forced waiver" was not made with an awareness of the "dangers and disadvantages" of self-representation. Wicks did not make a knowing choice to represent herself.

[¶ 19] Wicks said she filed the disciplinary complaint in order to create a record of ineffective assistance of counsel on appeal. Her chief complaint was Martin's failure to file pretrial suppression motions. Wicks evidently relied on improvident advice from her boyfriend, Kelly Overby, in filing the disciplinary complaint. Wicks claims she did not realize her disciplinary complaint would result in Martin's withdrawal. It is not likely Overby informed Wicks of the pitfalls of following his recommended course of action or that he comprehended it himself. Consequently, Wicks did not intelligently waive her right to counsel when she unwittingly created a conflict of interest with her lawyer.

[¶ 20] Considering Wicks's willingness to proceed with Martin as her counsel, notwithstanding her filing of a disciplinary complaint, it appears Wicks did not waive her right to counsel.

[¶ 21] This case is in unique contrast to our decision in *State v. Harmon*, 1997 ND 233, 575 N.W.2d 635. In that case, Harmon claimed he had "irreconcilable differences" with his appointed counsel and sought newly appointed counsel. *Id.* at ¶ 2. The district court initially denied Harmon's request. *Id.* But after repeated requests for new counsel the district court relented and relieved the appointed counsel of *"actively defending"* Harmon, placing him instead in a standby role. *Id.* at ¶ 3. On appeal, we examined whether Harmon's "functional" waiver of his right to counsel was "knowing and intelligent." *Id.* at ¶ 17. We concluded the "functional" waiver was "knowing and intelligent" because counsel was made available and Harmon was aware of the "dangers and disadvantages of self-representation." *Id.* at ¶¶ 22–23.

[¶ 22] Unlike *Harmon*, Wicks intended to go to trial with Martin as her attorney and did not comprehend the consequences of filing a disciplinary complaint. The district court believed the conflict compelled it to grant the withdrawal of Wicks's appointed counsel. However, on the face of this record, the conflict was not irreparable.

## III

[¶ 23] While this case seems to place an attorney's ethical obligation to his client at odds with the client's Sixth Amendment right to representation at trial, the more troubling implication is the apparent attempt to use legal ethics and the Sixth Amendment as a sword to delay and frustrate the judicial process. *Neal v. Grammer*, 975 F.2d 463, 467 (8th Cir.1992). Rule 1.7 of the North Dakota Rules of Professional Conduct delineates three separate and distinct conflict of interest situations. *See* N.D. R. Prof. Conduct 1.7(a), (b) & (c).[1]

---

1. Paragraphs (a), (b) and (c) of the general conflict of interest rule provides:

    **Rule 1.7. Conflict of interest: general rule.**

    (a) A lawyer shall not represent a client if the lawyer's ability to consider, recommend, or carry out a course of action on behalf of the client will be adversely affected by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests.

    (b) A lawyer shall not represent a client when the lawyer's own interests are likely to adversely affect the representation.

    (c) A lawyer shall not represent a client if the representation of that client might be adversely affected by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

    (1) The lawyer reasonably believes the representation will not be adversely affected; and

[¶ 24] The comment to Rule 1.7, N.D. R. Prof. Conduct, notes that paragraphs (a) and (b) address situations where "the lawyer is absolutely prohibited from undertaking or continuing representation of the client." However, the comment further instructs that:

"Paragraph (c) addresses the situation where the lawyer's own interests or the lawyer's responsibilities to another client or to a third person simply *might* adversely affect the lawyer's representation of a client. In this situation the lawyer is permitted to undertake the representation if the lawyer reasonably believes there will be no adverse effect on the representation and if the clients consent after consultation."

Comment to Rule 1.7, N.D. R. Prof. Conduct (Emphasis added).

[¶ 25] There are many reasons why a disciplinary complaint may be leveled against an attorney. While some complaints may have a valid basis, "many complaints are dismissed because they are groundless." *Annual Report of the North Dakota Judicial System*, 30 (1996). If the filing of a disciplinary complaint could stop the prosecution of a criminal defendant the administration of justice would come to a halt. A disciplinary complaint against an appointed attorney cannot be used as an artifice to create the irreconcilable conflict of interest envisioned in paragraphs (a) and (b). N.D. R. Prof. Conduct 1.7(a) & (b). *Cf. Farm Credit Bank of St. Paul v. Brakke*, 512 N.W.2d 718, 720 (N.D.1994) (holding fact that trial judge was being sued by party in pending action did not require recusal because it would allow litigants to eliminate unsatisfactory judges by merely suing them). Nor can the consent requirements of paragraph (c) be followed blindly, because a client's consent may never come.

[¶ 26] A similar dilemma is present when a continuance is sought so a defendant can change lawyers. "When a continuance is sought to retain or replace counsel,

(2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications

the right to select counsel must be carefully balanced against the public's interest in the orderly administration of justice." *Urquhart v. Lockhart*, 726 F.2d 1316, 1319 (8th Cir. 1984) (quoting *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir.1981)). In such cases, trial courts have the discretion to determine whether or not to grant a continuance. *State v. Foster*, 1997 ND 8, ¶ 14, 560 N.W.2d 194 (noting distrust of appointed counsel is not sufficient to secure a substitution); *State v. DuPaul*, 527 N.W.2d 238, 243 (N.D.1995) (stating "trial court has no duty to appoint a specific counsel, or to continually seek new counsel for a capricious and difficult defendant"). *See also United States v. Swinney*, 970 F.2d 494, 499 (8th Cir.1992) (holding federal district court did not abuse its discretion in denying defendant's request for continuance and substitution of counsel where relationship with counsel although not meaningful did not reflect irreconcilable conflict).

[¶ 27] In exercising its discretion, the court may consider the time required and permitted for trial preparation and the diligence of the moving party. *United States v. Ware*, 890 F.2d 1008, 1010 (8th Cir.1989) (noting five factors for courts to consider in deciding whether to grant a continuance). For instance, in *Urquhart v. Lockhart*, the Eighth Circuit held a trial court did not violate a prisoner's Sixth Amendment right to counsel in denying a request for a continuance, where the question of a continuance was not presented until day of trial. 726 F.2d at 1319.

[¶ 28] Similarly, on the day of trial in this case, when the district court became aware of the disciplinary complaint, the court was left with other options. For instance, considering Wicks's expectation and willingness to proceed with Martin as her attorney, the court could have denied Martin's request for withdrawal and proceeded to trial that morning. Neither Wicks nor Martin were asked, on the record, whether that would be an agreeable option. The court may have also considered whether Wicks and Martin would

of the common representation and the advantages and risks involved.
N.D. R. Prof. Conduct 1.7(a), (b) & (c).

have been willing to go to trial with Martin as standby counsel. *See Harmon,* 1997 ND 233, 575 N.W.2d 635. If neither of these options were satisfactory, the court could have allowed Martin to withdraw and granted a continuance to arrange for new counsel, notwithstanding the opposition of the State. The wishes of the parties and counsel may guide which direction to take, but the final decision is within the discretion of the district court. *Cf. Foster,* 1997 ND 8, ¶ 6, 560 N.W.2d 194. The district court's belief in the existence of an irreparable conflict prevented consideration of the other options within its discretion.

[¶ 29] The court chose to allow Martin to withdraw and force Wicks to proceed pro se. Under the facts of this case, that was a denial of Wicks's right to counsel. *See* U.S. Const. amends. VI & XIV, § 1; N.D. Const. art. I, § 12.

### IV

[¶ 30] We reverse and remand for a disposition consistent with this opinion.

[¶ 31] SANDSTROM, NEUMANN, MARING, and MESCHKE, JJ., concur.