Filed 1/19/00 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2000 ND 6

State of North Dakota, Plaintiff and Appellee

v.

Larry Dvorak, Defendant and Appellant

No. 990135

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable Zane Anderson, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Owen K. Mehrer, Assistant State’s Attorney, P.O. Box 130, Dickinson, ND 58602-0130, for plaintiff and appellee.

David F. Senn, P.O. Box 1134, Dickinson, ND 58602-1134, for defendant and appellant.

Robert P. Bennett, Assistant Attorney General, Attorney General’s Office, 600 East Boulevard Avenue, Bismarck, ND 58505-0040, for amicus curiae Attorney General’s Office.  Submitted on brief.

State v. Dvorak

No. 990135

VandeWalle, Chief Justice.

[¶1] Larry Dvorak appealed a criminal conviction for violating a domestic violence protection order.  Dvorak argues he did not knowingly and intelligently waive his right to counsel.  We conclude this record demonstrates Dvorak voluntarily, knowingly, and intelligently waived his right to counsel.  We affirm.

I

[¶2] In April 1998, Dvorak was charged under N.D.C.C. § 14-07.1-06 with violating a domestic violence protection order by contacting his children and his ex-

wife’s parents in contravention of a protection order issued in May 1997.  The complaint alleged the offense was Dvorak’s second violation of the protection order and therefore was a class C felony.

[¶3] On June 2, 1998, Dvorak appeared at his initial appearance with attorney Robert Keogh.  The court advised Dvorak of his rights under N.D.R.Crim.P. 5, including an indigent’s right to court-appointed counsel.  Keogh informed the court he would not be representing Dvorak in the criminal proceeding, and Dvorak said his attorney would be Tom Slorby.  Dvorak subsequently applied for court-appointed counsel, and the court appointed William Heth to represent Dvorak.

[¶4] Heth represented Dvorak at a preliminary hearing and arraignment in June 1998.  Thereafter, a jury trial was scheduled for September 8, 1998.  In August 1998, Dvorak, through Heth, moved for a continuance, alleging Dvorak “was in the midst of harvesting season” and “needed additional time to contact his witnesses.”  The court denied Dvorak’s motion.  At a pretrial conference on September 1, 1998, Dvorak appeared with Heth and with attorney T. L. Secrest.  Heth advised the court that Dvorak wanted to retain Secrest as counsel.  The court allowed Secrest to substitute as counsel for Dvorak and granted a continuance.  A jury trial was rescheduled for December 21, 1998.

[¶5] Dvorak failed to appear for the rescheduled trial, and the court issued a bench warrant for his arrest.  Dvorak was arrested on January 7, 1999, and the trial was rescheduled for February 5, 1999.  Meanwhile, on December 21, 1998, Secrest moved to withdraw as Dvorak’s attorney, claiming Dvorak failed to pay attorney fees and failed to communicate and provide evidence to enable Secrest to effectively represent Dvorak.  The State did not resist Secrest’s motion, and the court allowed Secrest to withdraw as counsel on January 8, 1999.

[¶6] At a January 28, 1999 status conference, the court noted Dvorak was representing himself, and the following colloquy occurred:

THE COURT: Okay.  Well, I want it to be clear that you [Dvorak] were aware of [the February 5, 1999 trial date] and make sure that everyone is ready to proceed.  Is that the case Mr. Dvorak?

MR. DVORAK: Well, I’ve been trying to find an attorney.  I’ve been making phone calls like crazy all week here trying to get something going.  It’s pretty difficult to find an attorney out of town that would come down here.  I think I might have one.  I’ve got to call him back today.

THE COURT: All right.  Well, you know we’re summoning all of the jurors in and of course, we don’t want to do that knowing that you’re not prepared or something.

MR. DVORAK: Well, I think if I do get an attorney he’s going to want an extension on it too, you know, catch up on everything.  I got to know today cause — it’s such ridiculous charges I can’t see where it could even go to court.

THE COURT: Well, if you’re going to make a motion I think in fairness to Mr. Mehrer and to the Court and to everyone involved that we need to know this immediately, as soon as possible.

MR. DVORAK: Yeah.  Well, I’m going to have to ask for an extension because I mean I can’t go into court without an attorney.  There’s no way.  I’ve talked to about five different attorneys and either the distance and a few other things that has come up and they just kind of put aside or whatever you want to call it.

THE COURT: Well, before I ask I’m going to ask Mr. Mehrer to respond on behalf of the State.  I guess the Court’s concern is even if the Court sees fit to grant you a continuance or extension because you’re having difficulty in getting in an attorney is that going to make a difference or are we going to have the same problem whether it’s two weeks from now or a month from now.

The court thereafter granted Dvorak another continuance and scheduled a March 8, 1999 pretrial conference and a March 15, 1999 trial.  The court informed Dvorak:

Of course, if you fail to appear you know you have a bond posted and you have to appear or you forfeit your bond.  If you get an attorney, of course, immediately have him file a notice of appearance so we know who the attorney is and I want — we’ve had this matter pending for quite sometime so you have to know now that it’s not going to be continued again.  I think we’ve gone probably a few steps too far already.  We’re stuck with that date and don’t expect to come in at the last minute and ask for another extension or continuance.

[¶7] At the March 8 pretrial conference, Dvorak appeared without counsel and informed the court he would waive his right to a jury trial.  The court asked Dvorak whether he was voluntarily waiving his right to a jury trial, and Dvorak responded, in part, “I guess.  I don’t have no attorney so.”  Dvorak represented himself during the March 15, 1999 bench trial, and the court found him guilty of violating the domestic violence protection order.

II

[¶8] On appeal, now represented by court-appointed counsel, Dvorak argues he did not knowingly and intelligently waive his right to counsel in the trial court.

[¶9] A criminal defendant’s fundamental right to counsel is guaranteed by the Sixth Amendment of the United States Constitution and by N.D. Const. art. I, § 12.  
City of Fargo v. Rockwell
, 1999 ND 125, ¶ 7, 597 N.W.2d 406; 
State v. Wicks
, 1998 ND 76, ¶ 16, 576 N.W.2d 518; 
State v. Poitra
, 1998 ND 88, ¶ 7, 578 N.W.2d 121.  The denial of a defendant’s right to counsel at trial is not subject to harmless error analysis and requires reversal of the defendant’s conviction.  
Rockwell
, at ¶ 7; 
Wicks
, at ¶ 17; 
Poitra
, at ¶ 7; 
State v. Harmon
, 1997 ND 233, ¶ 16, 575 N.W.2d 635.

[¶10] In 
Faretta v. California
, 422 U.S. 806, 818-21 (1975), the United States Supreme Court held criminal defendants have a corollary right under the Sixth Amendment to conduct their own defense.  
Rockwell
, 1999 ND 125, ¶ 8, 597 N.W.2d 406; 
Poitra
, 1998 ND 88, ¶ 8, 578 N.W.2d 121; 
Harmon
, 1997 ND 233, ¶ 16, 575 N.W.2d 635; 
State v. Hart
, 1997 ND 188, ¶ 6, 569 N.W.2d 451.  Criminal defendants who proceed pro se necessarily relinquish many of the benefits associated with the right to counsel, and in order to proceed pro se, they must voluntarily, knowingly, and intelligently relinquish the benefits of counsel.  
Rockwell
, at ¶ 8.  A defendant need not have the skill and experience of a lawyer to competently and intelligently choose self-representation, but the defendant should be aware of the dangers and disadvantages of self-representation so the record establishes the choice is made with eyes open.  
Faretta
, at 835.

[¶11] An unavoidable tension exists between the right to counsel and the right to self-representation, because asserting one right necessitates a waiver of the other.  In recent years, we have become increasingly involved with the tension between those mutually exclusive rights.  In 
Harmon
, 1997 ND 233, ¶ 23 n.1, 575 N.W.2d 635, we acknowledged increasing problems with defendants who proceed pro se, and suggested “[t]rial courts should be careful to make specific on-the-record determinations about whether a defendant unequivocally, knowingly, and intelligently waived either his right to counsel or self-representation.  Such a determination should make clear the dangers and disadvantages of self-representation.”  Although we have not required trial courts to engage in a specific colloquy with a defendant who appears  pro se, we prefer that trial courts eliminate any ambiguity about a waiver by making a specific on-the-record decision the defendant voluntarily, knowingly, and intelligently waived the right to counsel.  
Rockwell
, 1999 ND 125, ¶ 15, 597 N.W.2d  406; 
Poitra
, 1998 ND 88, ¶ 8, 578 N.W.2d 121; 
Harmon
, at ¶ 22.  Our preference for an on-the-record determination parallels the well-established principle that a waiver of the right to counsel will not be presumed from a silent record and courts will indulge every reasonable presumption against waiver.  
Carnley v. Cochran
, 369 U.S. 506, 516 (1962); 
Johnson v. Zerbst
, 304 U.S. 458, 464 (1938); 
State v. Gustafson
, 278 N.W.2d 358, 362 (N.D. 1979).  
See
 
State v. Wilson
, 488 N.W.2d 618, 620 (N.D. 1992) (stating similar principle for waiver of right to new trial); 
State v. Kranz
, 353 N.W.2d 748, 752 (N.D. 1984) (stating similar principle for waiver of right to jury trial).

[¶12] We have applied a two-step inquiry to analyze a criminal defendant’s waiver of the right to counsel and decision to proceed pro se:  (1) whether the defendant’s waiver of the right to counsel was voluntary; and (2) whether the defendant’s waiver was knowing and intelligent.  
Rockwell
, 1999 ND 125, ¶ 9, 597 N.W.2d 406; 
Harmon
, 1997 ND 233, ¶ 22, 575 N.W.2d 635.  
See
 
Patterson v. Illinois
, 487 U.S. 285, 292 n.4 (1988) (stating waiver of right to counsel must be voluntary and knowing and intelligent).

A

[¶13] In 
Harmon
, 1997 ND 233 at ¶¶ 15, 21, 575 N.W.2d 635, we rejected an argument the record must show an unequivocal statement indicating the defendant’s desire to proceed pro se, and we concluded the defendant’s conduct may be the functional equivalent of a voluntary waiver of the right to counsel.  
See also
 
Rockwell
, 1999 ND 125, ¶ 14, 597 N.W.2d 406.  In 
Rockwell
, at ¶ 14, and 
Harmon
, at ¶ 21, we concluded the defendants’ continued requests for a new court-appointed attorney after the trial court clearly denied an initial request was the functional equivalent of a voluntary waiver of the right to counsel.

[¶14] Here, Dvorak was represented during different stages of this proceeding by both appointed and retained counsel, and the court ultimately approved the withdrawal of both his appointed and retained counsel.  Dvorak received a continuance but failed to appear for the rescheduled trial, requiring a bench warrant for his arrest.  At the January 28, 1999 status conference, the trial court noted Dvorak was representing himself and, after granting Dvorak another continuance, unequivocally indicated there would be no further continuances and the case would proceed to trial in March.  After receiving the court’s admonition that “we’re stuck with [the March 1999 trial] date and don’t expect to come in at the last minute and ask for another extension or continuance,” Dvorak did not seek a second court-appointed counsel and appeared more than five weeks later without counsel at the March pretrial conference and the trial.  The record reveals a pattern of conduct by Dvorak that can best be described as an attempt to avoid the trial of the charge against him.  Perhaps Dvorak hoped the charge would be dismissed as he expressed at the March 8, 1999 pretrial conference where he indicated he wanted the case tried to the court “or dismissed.”

[¶15] Although we prefer the waiver of the right to counsel be expressed on the record, where there is a pattern of obstructing the legal process that waiver will seldom be acknowledged by the defendant.  
See
 
People v. Arguello
, 772 P.2d 87, 93 (Colo. 1989) (stating implied waiver of right to counsel by misconduct is more accurately described as forfeiture of right).  Rather, the right to counsel becomes a means by which a defendant can further obstruct the legal process by rejecting court-appointed counsel or retaining and discharging private counsel, all the while insisting the desire for and right to counsel.  Given the trial court’s clear admonition, we conclude Dvorak’s prior conduct and appearance at trial without counsel and without asking for a second court-appointed counsel constitutes the functional equivalent of a voluntary waiver of his right to counsel.

B

[¶16] We nevertheless must consider whether Dvorak’s functional waiver was knowing and intelligent.  A knowing and intelligent waiver requires a defendant be aware of the dangers and disadvantages of self-representation so the record establishes the defendant knows what he is doing and his choice is made with eyes open.  
Faretta
, 422 U.S. at 835; 
Rockwell
, 1999 ND 125, ¶ 8, 597 N.W.2d 406;  
Poitra
, 1998 ND 88, ¶ 8, 578 N.W.2d 121; 
Wicks
, 1998 ND 76, ¶ 18, 576 N.W.2d 518; 
Harmon
, 1997 ND 233, ¶ 22, 575 N.W.2d 635.  We have held whether a defendant knowingly and intelligently waives the right to counsel requires an examination of the record and the facts and circumstances of each case; a specific on-the-record warning is not an absolute necessity if the record shows the defendant had the required knowledge from other sources.
(footnote: 1)  
Rockwell
, at ¶ 15; 
Poitra
, at ¶¶ 8, 11; 
Harmon
, at ¶ 22.  Under our cases, the test is not limited to what the trial court said or understood, the inquiry focuses on what the defendant understood.  
See
 3 LaFave, Israel, and King, 
Criminal Procedure
 § 11.5(c), at 578-79 (2d ed. 1999).

[¶17] In 
Rockwell
, 1999 ND 125, ¶ 16, 597 N.W.2d 406, the defendant informed the trial court he wanted to represent himself and did not want court-appointed counsel. The trial court advised the defendant if he represented himself, he would be responsible for making his own statements, cross-examining the prosecution’s witnesses, and calling his own witnesses for his defense.  
Id.
  The trial court also informed the defendant he would be expected to conform to rules and procedure of the court.  
Id.
  The defendant responded he would “do whatever the lawyer is supposed to do, [and be] responsible for the aspect of the lawyer.”  
Id.
  We concluded the record established the defendant knowingly and intelligently waived his right to counsel.  
Id.

[¶18] In 
Poitra
, 1998 ND 88, ¶ 13, 578 N.W.2d 121, the trial court granted court-appointed counsel’s motion to withdraw, and the defendant subsequently attended a pretrial conference without counsel and informed the court he had no other alternative than to represent himself because  he was unable to secure a loan to hire an attorney.  After hearing the defendant’s explanation, the trial court made no further inquiry about the defendant’s self-representation and did not inform him about the dangers and disadvantages of self-representation.  
Id.
  We recognized although the defendant had previous contacts with  the criminal justice system, his statement he had no other alternative but self-representation did not establish his awareness of the dangers and disadvantages of self-representation.  
Id.
  We said there was no evidence the defendant’s actions were intended primarily to delay the trial, and we concluded the record did not establish he knowingly and intelligently waived his right to counsel.  
Id.

[¶19] In 
Harmon
, 1997 ND 233, ¶ 23, 575 N.W.2d 635, the defendant had several previous contacts with the criminal justice system; the trial court had provided the defendant with copies of the court rules and the criminal code; the court explained the defendant would be given no special consideration and the rules would apply equally to him; the defendant was very involved with his case, was literate, and directed correspondence to the court; and the court appointed standby counsel and informed the defendant that standby counsel’s assistance may be beneficial.  We concluded the record established the defendant knowingly and intelligently waived his right to counsel.  
Id.

[¶20] Dvorak argues there is nothing in this record to indicate the trial court advised him of the dangers and disadvantages of appearing pro se.  Although a specific on-the-record colloquy would have aided our review, we conclude this record demonstrates Dvorak’s waiver of the right to counsel was knowing and intelligent.

[¶21] The criminal complaint alleged this was Dvorak’s second violation of the protection order and therefore was a class C felony.  The record actually reflects he was convicted in June 1992 and in March 1998 for violating protection orders.  Dvorak appeared pro se on the previous 1998 charge.  Additionally, this record demonstrates Dvorak had numerous prior contacts with the criminal justice system, including prior convictions for removal of a child from the jurisdiction, criminal trespass, operating a motor vehicle without a license, driving under suspension, and driving under the influence.  The record reflects Dvorak was represented by counsel during a probation revocation proceeding in 1994.  As a result of that revocation proceeding, the court revoked Dvorak’s probation for two counts of driving under suspension, a criminal trespass conviction, and the June 1992 conviction for violating a protection order. The record also reflects Dvorak was represented by counsel when the May 1997 protection order was issued and when his 1993 divorce decree was entered.  Dvorak was not a stranger to the criminal justice system.  Rather, he was an experienced criminal defendant, and his prior contacts with the legal system were sufficient to make him aware of the benefits of counsel and the dangers and disadvantages of self-representation.

[¶22] At Dvorak’s initial appearance, he was informed of his rights under N.D.R.Crim.P. 5, including the right to court-appointed counsel and informed that the maximum penalty for a class C felony was five thousand dollars and five years in jail.  Dvorak initially indicated he did not want court-appointed counsel and Tom Slorby was his attorney.  Dvorak nevertheless subsequently applied for court-appointed counsel, and the court appointed Heth to represent Dvorak.  Heth represented Dvorak at a preliminary hearing and arraignment in June 1998, and Dvorak, through Heth, moved for a continuance in August 1998.  The court denied the motion for a continuance.  At a pretrial conference on September 1, 1998, Dvorak appeared with Heth and attorney Secrest, and Dvorak advised the court he wanted to retain Secrest.  The court allowed Secrest to substitute for Heth as counsel and granted Dvorak a continuance.  Dvorak then failed to appear for a rescheduled jury trial in December 1998, and he was arrested under a bench warrant on January 7, 1999.  Meanwhile, on December 21, 1998, Secrest moved to withdraw as Dvorak’s attorney, claiming Dvorak failed to pay attorney fees and failed to communicate and provide evidence to Secrest.  The State did not resist Secrest’s motion, and the trial court allowed Secrest to withdraw as Dvorak’s counsel on January 8, 1999.

[¶23] At a January 28, 1999 status conference, the court noted Dvorak was representing himself.  Dvorak said he thought he might have an attorney and indicated if he retained an attorney, the attorney would want a continuance.  Dvorak recognized he was aware of the benefits of counsel and the dangers and difficulties of self-representation when he asked for another continuance because “I can’t go into court without an attorney.”  The court continued Dvorak’s trial to March 1999 and unambiguously informed him there would be no further continuances.  Despite Dvorak’s acknowledgment he could not go to court without an attorney and the court’s warning there would be no further continuances, Dvorak did not request another court-appointed counsel and appeared pro se at the March 1999 pretrial conference and trial.  As we observed above, Dvorak’s pretrial conduct suggests a manipulative pattern of delay primarily calculated to serve his goal of having the charge dismissed.  
Compare
 
Poitra
, 1998 ND 88, ¶ 13, 578 N.W.2d 121 (stating nothing in the record suggested defendant’s actions were intended primarily to delay trial).  A defendant’s manipulative or obstructive conduct is relevant to whether a decision to proceed pro se is knowing and intelligent.  
See
 
United States v. Yagow
, 953 F.2d 427, 432 (8th Cir. 1992); 
United States v. Willie
, 941 F.2d 1384, 1388-91 (10th Cir. 1991); 
Meyer v. Sargent
, 854 F.2d 1110, 1115 (8th Cir. 1988); 
United States v. Gallop
, 838 F.2d 105, 109-11 (4th Cir. 1988).

[¶24] At trial, Dvorak indicated he was ready to proceed and offered several exhibits to support his theory the prior protection order was invalid or illegal.  Dvorak’s presentation of his case at trial indicates an awareness that  he was responsible for the functions of counsel.  
See
 
Rockwell
, 1999 ND 125, ¶ 16, 597 N.W.2d 406.

[¶25] We conclude Dvorak’s pretrial conduct and manipulative pattern of delay, his prior experience with the criminal justice system, and his awareness of the benefits of counsel and the dangers of self-representation indicates he decided to proceed pro se with his eyes open and understood the dangers and disadvantages of self-representation.  Dvorak’s decision to appear pro se ultimately may have been an error in judgment, but that does not foreclose his decision from being knowingly and intelligently made.  
Rockwell
, 1999 ND 233, ¶ 16, 597 N.W.2d 406; 
Harmon
, 1997 ND 233, ¶ 23, 575 N.W.2d 635.  Although we continue to encourage trial courts to conduct a specific on-the-record colloquy regarding self-representation to provide this Court with an objective basis for reviewing the waiver, under these circumstances, we conclude this record is not silent and establishes Dvorak’s functional waiver of his right to counsel was knowingly and intelligently made.

III

[¶26] Dvorak argues N.D.C.C. § 14-07.1-06 is unconstitutional because it does not include a culpability requirement and could be used to punish innocent and mistaken conduct.

[¶27] When Dvorak violated the protection order in 1998, N.D.C.C. § 14-07.1-06 provided
(footnote: 2):

Penalty for violation of a protection order.
  Whenever a protection order is granted pursuant to section 14-07.1-02 or 14-07.1-03 and the respondent or person to be restrained has been served a copy of the order, a violation of the order is a class A misdemeanor and also constitutes contempt of court.  A second or subsequent violation of a protection order is a class C felony subject to the penalties therefor.

[¶28] Generally, a party may only challenge the constitutionality of a statute as applied to that party.  
State v. Morris
, 331 N.W.2d 48, 58 (N.D. 1983); 
State v. Rippley
, 319 N.W.2d 129, 134 (N.D. 1982).

[¶29] Here, Dvorak’s divorce decree had been amended in April 1997 to limit him to supervised visitation with his children and to restrain him from harassing any member of his ex-wife’s family.  Dvorak appeared and was represented by counsel in proceedings leading up to the May 1997 protection order.  Dvorak was served with the protection order, and this conviction was his second for violating that order.  He admitted he understood the protection order, and offered evidence the order was “illegal” and “false.”  Dvorak does not claim his contact with his children and his ex-wife’s parents was innocent or a mistake.  Because Dvorak has not claimed his acts which brought him within the prohibitions of N.D.C.C. § 14-07.1-06 were innocent or mistaken, he may not challenge the constitutionality of the statute as applied to his conduct.

IV

[¶30] Dvorak argues the May 1997 protection order was invalid, because his ex-wife’s request for the order did not seek protection for her parents and did not seek to preclude contact with her parents and his children although the order provided for their protection.

[¶31] Dvorak had notice of the protection order, and his argument represents an impermissible collateral attack on the order. 
See
 
Interest of R.A.
, 551 N.W.2d 800, 802 (N.D. 1996); 
State v. Stuart
, 544 N.W.2d 158, 163 (N.D. 1996); 
State v. Mertz
, 514 N.W.2d 662, 666-67 (N.D. 1994).  If Dvorak believes the protection order was invalid, his remedy was to have timely appealed that order.

V

[¶32] We affirm Dvorak’s conviction.

[¶33] Gerald W. VandeWalle, C.J.

Dale V. Sandstrom

William A. Neumann

Mary Muehlen Maring

Carol Ronning Kapsner

FOOTNOTES
1:    
Other courts have also considered the record necessary to establish that a defendant’s waiver of counsel is knowing and intelligent.  
See
 3 LaFave, Israel, and King, 
Criminal Procedure
 § 11.5(c) (2d ed. 1999).  Generally, trial courts should ascertain the defendant is aware of the nature of the charges, the statutory offenses included within the charges, the range of punishment, possible defenses or mitigation to the charges, and all other facts necessary to a broad understanding of the matter.  3 
id.
 § 11.5(c), at 574, citing 
Von Moltke v. Gillies
, 332 U.S. 708, 724 (1948) (plurality opinion of Black, J.).

The preferred procedure for deciding a defendant has made a knowing and intelligent waiver of the right to counsel is a specific on-the-record colloquy about the dangers and disadvantages of self-representation, including that (1) presenting a defense is more than simply telling a story and requires adherence to technical rules governing the conduct of a trial; (2) a lawyer has substantial experience and training in trial procedure and the prosecution will be represented by an experienced attorney; (3) a person unfamiliar with legal procedures may allow the prosecution an advantage by failing to object to inadmissible evidence and making tactical decisions that produce unintended consequences; (4) a defendant’s possible defenses and other rights may be permanently lost if not timely asserted; (5) pro se defendants cannot complain on appeal about the competency of their representation; and (6) the effectiveness of defendant’s defenses may be diminished by the dual roles as attorney and accused.  3 LaFave, Israel, and King, 
Criminal Procedure
 § 11.5(c), at 574-75.  If the defendant persists in self-representation after a warning about those dangers, trial courts should ascertain the defendant understands and appreciates the disadvantages and possible consequences of self-representation with an inquiry about factors that have a bearing on the defendant’s ability to comprehend, including age, education, social background, mental health history, prior experience or familiarity with criminal trials, and prior consultation with counsel in deciding to proceed pro se.  3 
id.
 § 11.5(c), at 575.  A formal inquiry not only assists trial courts in deciding issues about a defendant’s waiver, but provides an appellate court with an objective basis for reviewing the waiver.  3 
id.
 § 11.5(c), at 575-76.

Some courts have elevated the preferred procedure to mandate a specific on-the-record colloquy about the dangers and disadvantages of self-representation.  
See
 3 LaFave, Israel, and King, 
Criminal Procedure
 § 11.5(c), at 576.  Some federal appellate courts have prospectively required trial courts to follow the inquiry set forth in the 
Benchbook for U.S. District Court Judges
 § 1.02 (4th ed. 1996).  
See
 
United States v. Yagow
, 953 F.2d 427, 432 (8th Cir. 1992); 
United States v. McDowell
, 814 F.2d 245, 250 (6th Cir. 1987).  A majority of courts, however, do not require trial courts to perform a specific on-the-record colloquy, and instead, review the record as a whole to decide the sufficiency of a waiver.  
E.g.
, 
United States v. Gallop
, 838 F.2d 105, 110 (4th Cir. 1988); 
McDowell
, at 249.  
See
 3 LaFave, Israel, and King, 
Criminal Procedure
 § 11.5(c), at 576.

2:    
Section 14-07.1-06, N.D.C.C., was amended in 1999 to include language proscribing violation of a foreign protection order.  1999 N.D. Sess. Laws ch. 138, § 2.