Jensen, Justice.
 

 [¶1] J.G., the mother of minor child J.J.T., appeals from a judgment terminating her parental rights to the child. J.G. argues the juvenile court erred in finding J.J.T. was deprived, in denying her court-appointed counsel's motion for a continuance to prepare for trial, in granting her court-appointed counsel's motion to withdraw as counsel of record and appointing that counsel as standby counsel, and in denying her statutory right to counsel. Because we conclude the juvenile court did not abuse its discretion in denying a continuance and in allowing withdrawal of counsel, J.G.'s actions were the functional equivalent of a voluntary, knowing, and intelligent waiver of her right to counsel, and the statutory requirements for termination of J.G.'s parental rights were satisfied, we affirm the judgment.
 

 I
 

 [¶2] In a petition filed with the juvenile court on June 23, 2014, the paternal grandfather of the child born in February 2014 sought to terminate the biological parents' parental rights in the child. The petition alleged that J.G. regularly left the three-month-old child unattended while she engaged in late-night entertaining involving illicit drug use, that a recent drug test on a hair sample of the child revealed excessive levels of illicit drugs present in the child, including methamphetamine, marijuana, and cocaine, and that J.G. had displayed ongoing and persistent neglect regarding the day-to-day care of the child. The petition alleged the child had resided with the grandfather since May 5, 2014, and asked that he be appointed custodian and guardian of the child, but did not seek other specific relief beyond the termination of the parents' parental rights and did not specifically seek adoption or other permanent placement of the child. Subsequently, the paternal grandfather voluntarily dismissed the petition as it related to termination of the father's parental rights.
 

 [¶3] A hearing on the petition for the termination of parental rights was originally scheduled for July 25, 2014, but that hearing was continued because service of the petition on J.G. was not effectuated until August 2014. According to counsel for the grandfather, the Williams County Sheriff's office made multiple attempts to serve the petition on J.G. and expressed a belief that she was intentionally avoiding service. Counsel claimed J.G.'s avoidance of personal service in the termination proceeding was an attempt to bolster her position in seeking to dismiss guardianship proceedings on the grounds that her parental rights had not been terminated.
 

 [¶4] After a September 24, 2014 hearing, the juvenile court entered a protective order awarding the grandfather temporary custody and guardianship, residential responsibility, and decision-making authority for the minor child. The protective order
 
 *109
 
 also stated a termination hearing was scheduled for December 12, 2014.
 

 [¶5] J.G. sent a December 8, 2014, handwritten letter to the juvenile court asking for a continuance of the scheduled termination hearing. According to J.G., she was in jail on pending criminal charges. The court granted J.G. a continuance, and the termination hearing was rescheduled to February 6, 2015.
 

 [¶6] On February 5, 2015, a letter bearing a physician's signature was filed with the juvenile court on stationary from a medical facility. The letter stated that J.G. was unable to make her scheduled court appearance on February 6, 2015, and requested a continuance to "tend to her medical needs." The court granted the request for a continuance, and the termination hearing was rescheduled for June 8, 2015.
 

 [¶7] J.G. did not have counsel on June 8, 2015, and the record reflects the termination hearing ultimately was rescheduled to October 19, 2016. On June 23, 2015, J.G. filed an application for the appointment of indigent defense counsel and counsel was appointed on June 24, 2015. In September 2015, a different attorney was appointed to represent J.G. under a conflict reassignment, and a third attorney was appointed to represent J.G. in January 2016.
 

 [¶8] In October 2016, J.G.'s appointed counsel sought and was granted a continuance. Counsel asserted he believed the trial would only require two days, and he was informed on October 14, 2016, that the grandfather's counsel believed the trial would take four days. According to J.G.'s counsel, he would not be available for the entire scheduled four-day trial. On October 18, 2016, the juvenile court continued the termination hearing.
 

 [¶9] In January 2017, the juvenile court ordered the parties to appear for a scheduling conference in February 2017, and on April 4, 2017, the termination hearing was rescheduled for February 8, 2018.
 

 [¶10] On May 24, 2017, J.G.'s court-appointed counsel moved to withdraw as counsel, asserting J.G. had substantially failed to fulfill her obligations to her attorney and, despite warnings, failed to remain in contact with her attorney. The juvenile court granted the motion to withdraw on August 4, 2017. On December 18, 2017, the grandfather moved to require J.G. to respond to discovery requests. On December 29, 2017, J.G. filed an application for court-appointed counsel and attorney Daniel Gulya was appointed to represent her on January 6, 2018. In an order signed on January 12, 2018, and emailed to counsel on January 17, 2018, the court ordered J.G. to comply with the grandfather's discovery requests within seven days.
 

 [¶11] On January 17, 2018, attorney Gulya moved for a continuance of the February 8, 2018 termination hearing, asserting he had insufficient time to adequately prepare for the hearing. According to attorney Gulya, the motion for a continuance was based on "schedule congestion," including a scheduled deposition in this case on January 22, 2018, and counsel's felony jury trials in three other criminal cases scheduled before the termination hearing on February 8, 2018.
 

 [¶12] On January 31, 2018, the juvenile court issued an order for J.G. to show cause on February 8, 2018, for her failure to comply with the January 2018 order compelling discovery. On February 1, 2018, the court denied attorney Gulya's motion for a continuance, finding there was not cause for a continuance after stating the matter had been continued numerous times and needed to proceed to trial. Attorney Gulya immediately requested reconsideration. On February 2, 2018, attorney Gulya moved to withdraw as counsel, asserting he could not competently represent
 
 *110
 
 J.G. within the time frame for the upcoming hearing. Also on February 2, 2018, the grandfather filed a motion requesting that the unanswered requests for admission be deemed admitted, and the court granted the grandfather's motion on February 7, 2018.
 

 [¶13] At the beginning of the February 8, 2018 termination hearing, the juvenile court stated that it was denying the motion to reconsider a continuance and reiterated that it had granted the motion to deem the unanswered requests for admission be admitted. The court granted attorney Gulya's request to withdraw as counsel of record, required him to act as standby counsel for J.G., and informed her that she would be representing herself in the hearing with the assistance of attorney Gulya as standby counsel. J.G. stated she would rather not represent herself. After further extensive discussion about the previously granted continuances and the reasons for those continuances, the court proceeded with the termination hearing with attorney Gulya as standby counsel for J.G.
 

 [¶14] After the termination hearing, the juvenile court terminated J.G.'s parental rights to the child, finding clear and convincing evidence for termination under N.D.C.C. § 27-20-44(1)(a), (b), and (c) on the separate grounds of abandonment, aggravated circumstances, and deprivation that was likely to continue or would not be remedied and would cause the child to suffer serious mental, emotional, or physical harm.
 

 II
 

 [¶15] We initially consider J.G.'s argument that she was improperly denied counsel at the termination hearing. In determining whether or not J.G. was improperly denied counsel, we must consider three interrelated decisions by the juvenile court-the denial of the motion for a continuance, the granting of attorney Gulya's motion to withdraw, and the determination that J.G. represent herself at the termination hearing with attorney Gulya as standby counsel.
 

 A
 

 [¶16] The juvenile court's denial of attorney Gulya's January 17, 2018, motion to continue the February 8, 2018, termination hearing will not be reversed on appeal absent an abuse of discretion.
 
 Interest of J.C.
 
 ,
 
 2007 ND 111
 
 , ¶ 6,
 
 736 N.W.2d 451
 
 ;
 
 Interest of A.S.
 
 ,
 
 2007 ND 83
 
 , ¶ 6,
 
 733 N.W.2d 232
 
 . An abuse of discretion requires a court to act unreasonably, arbitrarily, or unconscionably.
 
 J.C.
 
 , at ¶ 6. The determination of whether or not there has been an abuse of discretion in denying a motion for continuance is dependent upon the particular facts and circumstances of each case and there is no mechanical test to determine whether a court has abused its discretion.
 
 Id
 
 .
 

 [¶17] The child's current environment does not reflect the usual exigencies ascribed to termination proceedings because no adoption is planned, the father's rights were not terminated, and the child's living arrangements with the grandfather since May 2014, will not change. However, the delay in the resolution of this proceeding is disturbing. The grandfather lives in Michigan and the multiple continuances at the last minute have forced him to reschedule trips to North Dakota. J.G. has had no contact with the child in four years and most of the delay is primarily attributable to her requests for continuances and failure to promptly apply for court-appointed counsel. The termination hearing was originally scheduled for July 25, 2014, within the 30-day window required for termination of parental rights proceedings.
 
 See
 
 N.D.R. Juv. Ct. 2(a). Because service of process on J.G. had not been effectuated,
 
 *111
 
 the trial was initially rescheduled for December 2014, but was continued to February 2015 at J.G.'s request. On February 5, 2015, a letter was filed with the court claiming a medical condition and seeking a continuance, and the hearing was rescheduled to June 2015. J.G. failed to secure counsel before the scheduled June 2015 hearing, and the matter was rescheduled for October 19, 2016. Shortly before the October 19, 2016 hearing, J.G.'s appointed counsel asked for a continuance. The continuance was granted and the hearing was eventually rescheduled for February 8, 2018. During the intervening time period, J.G. failed to respond to discovery and failed to communicate with one of her court-appointed attorneys, who was allowed to withdraw in August 2017. Rather than promptly seeking new counsel, the record reflects J.G. waited until December 29, 2017, to file a new application for appointed counsel. In denying the motion for a continuance, the juvenile court declined to find good cause for a continuance after finding the proceeding had been continued numerous times and needed to proceed to trial. On this record, we cannot conclude that the court acted unreasonably, arbitrarily, or unconscionably in denying attorney Gulya's January 2018 motion for a continuance.
 

 B
 

 [¶18] The juvenile court's ruling on attorney Gulya's request to withdraw as J.G.'s counsel of record will not be reversed on appeal unless there was an abuse of discretion.
 
 Interest of I.B.A.
 
 ,
 
 2008 ND 89
 
 , ¶ 10,
 
 748 N.W.2d 688
 
 . The granting of a motion to withdraw is not an abuse of discretion if there is a showing of good cause for the withdrawal.
 
 Id
 
 .
 

 [¶19] Attorney Gulya filed an affidavit in support of his motion to withdraw, stating the time frame for the hearing precluded him from competently representing J.G. At the February 8, 2018 hearing, attorney Gulya indicated he had limited contact with J.G. for three days before the scheduled termination hearing, and she claimed her phone was broke and she was involved in a judicial hearing on another matter. Counsel filed the motion to withdraw after first attempting to secure a continuance of the February 8, 2018 hearing, in which he indicated he had three scheduled intervening felony jury trials before the termination hearing. The juvenile court extensively described the record of continuances ostensibly at the request of J.G. and the record of her dilatory actions in obtaining court-appointed counsel for the scheduled February 8, 2018, termination hearing. Attorney Gulya's submissions demonstrate good cause to withdraw, and the juvenile court was in a better position than this Court to evaluate the time constraints and demands on local counsel. We conclude the juvenile court did not act unreasonably, arbitrarily, or unconscionably in granting attorney Gulya's motion to withdraw as counsel of record for J.G. and in requiring him to act as standby counsel. We therefore conclude the court did not abuse its discretion.
 

 C
 

 [¶20] The effect of the juvenile court's orders denying a continuance and allowing attorney Gulya's withdrawal as counsel of record was that J.G. was required to represent herself at the termination hearing with his assistance as standby counsel. In
 
 I.B.A.
 
 ,
 
 2008 ND 89
 
 , ¶¶ 8-9,
 
 748 N.W.2d 688
 
 (citations omitted), we discussed a parent's right to counsel in a termination proceeding:
 

 We have recognized that parents have a fundamental natural right to their children, which is of constitutional dimension, but that right is not absolute nor unconditional. Parents do not have a
 
 *112
 
 constitutional due process right to appear at proceedings to terminate their parental rights, and their due process rights are satisfied if they are represented by counsel and have an opportunity to appear by deposition or other discovery technique. If the trial court determines that the party is indigent, the court must appoint counsel to represent that person, unless the right is waived.
 

 We have noted that waiver of counsel in criminal cases provides guidance in evaluating the validity of a waiver in a parental rights termination proceeding. In comparing parental termination cases to criminal cases, this Court has noted that the serious threat to a fundamental interest of a parent is not so different from the serious threat to the physical liberty of a criminal defendant. Regarding waiver of counsel, this Court stated:
 

 [D]efendants who represent themselves must voluntarily, knowingly, and intelligently relinquish the benefits of counsel. Whether a defendant's waiver of the right to counsel was knowing and intelligent depends on the facts and circumstances of each case. To intelligently and knowingly choose self-representation, a defendant should be aware of the dangers and disadvantages of proceeding without the skill and experience of counsel. The record must establish that the choice was made "with eyes open."
 

 [¶21] From the record it is clear that J.G. did not affirmatively request to represent herself, and we must consider this case from the perspective of whether or not her actions were the functional equivalent of a voluntary, knowing, and intelligent waiver of her right to counsel.
 
 See
 

 State v. Yost
 
 ,
 
 2014 ND 209
 
 , ¶ 14,
 
 855 N.W.2d 829
 
 ;
 
 I.B.A.
 
 ,
 
 2008 ND 89
 
 , ¶ 11,
 
 748 N.W.2d 688
 
 ;
 
 Adoption of S.A.L.
 
 ,
 
 2002 ND 178
 
 , ¶¶ 16-22,
 
 652 N.W.2d 912
 
 ;
 
 State v. Dvorak,
 

 2000 ND 6
 
 , ¶¶ 9-12,
 
 604 N.W.2d 445
 
 . We review de novo a claimed denial of the right to counsel.
 
 Yost
 
 , at ¶ 9.
 

 [¶22] This Court has applied a two-step inquiry to analyze a criminal defendant's waiver of the right to counsel and the decision to proceed without counsel: (1) whether the waiver was voluntary; and (2) whether the waiver was knowing and intelligent.
 
 Dvorak
 
 ,
 
 2000 ND 6
 
 , ¶ 12,
 
 604 N.W.2d 445
 
 . In
 
 Yost
 
 , we summarized our review of whether or not there has been a functional equivalent to a voluntary waiver:
 

 "[A] defendant need not make unequivocal statements indicating a voluntary desire to proceed pro se; rather, the defendant's conduct may be the functional equivalent of a voluntary waiver of the right to counsel." [
 
 State v
 
 .]
 
 Schneeweiss
 
 ,
 
 2001 ND 120
 
 , ¶ 27,
 
 630 N.W.2d 482
 
 . This Court has previously held that a defendant's conduct, such as continued requests for new court-appointed counsel after the trial court clearly denied an initial request or a manipulative pattern of obstructing the legal process, was the functional equivalent of a voluntary waiver of the right to counsel.
 
 Id
 
 . at ¶¶ 27, 29 (repeated requests for new counsel after prior request was denied and manipulating income when applying for indigent services);
 
 see also [
 

 City of Fargo v.] Rockwell
 
 ,
 
 1999 ND 125
 
 , ¶ 14,
 
 597 N.W.2d 406
 
 (continued requests for new counsel after trial court denied initial request);
 
 [
 

 State v.] Harmon
 
 ,
 
 1997 ND 233
 
 , ¶¶ 17, 21,
 
 575 N.W.2d 635
 
 (failing to cooperate with court-appointed counsel and continued requests for substitute counsel);
 
 Dvorak
 
 ,
 
 2000 ND 6
 
 , ¶¶ 14-15,
 
 604 N.W.2d 445
 
 (repeated requests for continuances and new counsel).
 

 Yost
 
 ,
 
 2014 ND 209
 
 , ¶ 15,
 
 855 N.W.2d 829
 
 .
 

 [¶23] We have identified a preference for a waiver of the right to counsel to be
 
 *113
 
 expressed on the record, but we have recognized that where there is a pattern of obstructing the legal process through continuances and claims for counsel, a waiver will never be acknowledged by a defendant.
 
 Dvorak
 
 ,
 
 2000 ND 6
 
 , ¶ 15,
 
 604 N.W.2d 445
 
 .
 

 [¶24] From this record, we conclude that J.G.'s actions in delaying and obstructing the legal process amounted to a functional equivalent of a voluntary waiver of her right to counsel. J.G. requested multiple continuances that directly led to significant delay in these proceedings. She waited to initiate her first application for appointed counsel until after a year into the proceedings and six months after being granted a continuance to prepare for the termination hearing. After being appointed counsel, she failed to communicate with at least one of her attorneys, which led to the juvenile court granting that attorney's motion to withdrawal from representation. The record reflects she then waited until six weeks before the scheduled termination hearing to apply for court-appointed counsel. We conclude J.G.'s conduct throughout these drawn-out proceedings constitute the functional equivalent of a voluntary waiver of her right to counsel.
 

 [¶25] We also must consider whether J.G.'s functional waiver of the right to counsel was knowing and intelligent. A knowing and intelligent waiver requires defendants to be aware of the dangers and disadvantages of self-representation so they know what they are doing and their choice is made with eyes open.
 
 Dvorak
 
 ,
 
 2000 ND 6
 
 , ¶ 16,
 
 604 N.W.2d 445
 
 . Whether defendants knowingly and intelligently waive their right to counsel necessitates an examination of the record and the facts and circumstances of each case.
 

 Id.
 

 A specific on-the-record warning is not absolutely necessary if the record shows the defendant had the required knowledge from other sources.
 

 Id.
 

 The test is not limited to what a trial court said or understood; the inquiry focuses on the defendant's understanding.
 

 Id.
 

 [¶26] At the termination hearing, J.G. stated that she agreed with attorney Gulya's assessment about lack of preparation time and that she recognized the proceeding was a serious matter involving whether she would be a part of her child's life. She also stated she would rather not represent herself. The juvenile court recognized that J.G.'s prior counsel moved to withdraw in May 2017, that the court granted that motion in August 2017, and that the record reflected she did not take steps to file a re-application for another court-appointed attorney until December 2017, which was six weeks before the scheduled termination hearing. The court allowed attorney Gulya to withdraw as counsel of record, but required him to remain as standby counsel to assist J.G. in the termination hearing. Gulya not only was appointed standby counsel, but he actually provided legal services to J.G. during trial which included consultation and examination of a witness. In addition to the designation of standby counsel, the record reflects that J.G. has prior experience with the criminal justice system and court-appointed counsel, and she was able to express herself through direct written communications to the court, including her prior requests for continuances. J.G.'s experience with the legal process made her aware of the advantages and benefits of counsel, yet she failed to take steps to file a re-application for appointment of counsel until six weeks before a scheduled termination hearing that had been continued multiple times at her request. J.G.'s pretrial conduct reflects a manipulative pattern of delay made with knowledge of what the legal proceedings entailed. We have recognized a defendant's manipulative and obtrusive conduct is relevant in determining
 
 *114
 
 whether proceeding pro se is knowing and intelligent.
 
 Dvorak
 
 ,
 
 2000 ND 6
 
 , ¶ 23,
 
 604 N.W.2d 445
 
 . Moreover, we have also recognized a self-represented party need not have the skill of a lawyer for there to be a knowing and intelligent waiver of the right to counsel.
 
 Id.
 
 at ¶ 25.
 

 [¶27] We are mindful of the circumstances which would weigh against a determination that J.G. did not voluntarily, knowingly, and intelligently waive her right to counsel. In particular, J.G. arrived at the February 8, 2018, hearing represented by counsel and was not informed by the juvenile court that she would be required to represent herself, with the assistance of standby counsel, until the hearing began. However, these circumstances are primarily attributable to her own actions. Although she was aware that her prior counsel had been allowed to withdraw in August 2017, she waited until December 29, 2017, to apply for new counsel. She was aware that her attorney did not believe he could be prepared for the termination hearing when the request to continue the hearing was filed on January 17, 2018, and denied on February 1, 2018. On February 2, 2018, her counsel filed a motion to withdraw. Although the juvenile court did not grant counsel's motion to withdraw until the day of the termination hearing, J.G. was aware that the motion for a continuance had been denied, that the termination hearing would occur on February 8, 2018, and that her attorney was seeking to withdraw from further representation. In summary, J.G. was well aware of the possibility of having to proceed without counsel prior to the February 8, 2018, hearing. We conclude J.G.'s conduct throughout these proceedings established a functional voluntary waiver of her right to counsel that was knowingly and intelligently made.
 

 III
 

 [¶28] J.G. has challenged the juvenile court's determination that her parental rights should be terminated. She argues the court erred in finding that J.J.T. is deprived, that the conditions and causes of the deprivation are likely to continue or will not be remedied, and that by reason thereof J.J.T. is suffering or will probably suffer serious physical, mental, moral, or emotional harm under N.D.C.C. § 27-20-44(1)(c).
 

 [¶29] It is unnecessary to consider the juvenile court's findings on deprivation because the court also found that J.G.'s parental rights should be terminated on the grounds that she has abandoned J.J.T. and that there were aggravated circumstances under N.D.C.C. § 27-20-44(1)(a) and (b). J.G. did not brief or otherwise challenge the juvenile court's findings of abandonment and aggravated circumstances. "[A] party waives an issue by not providing supporting argument and, without supportive reasoning or citations to relevant authorities, an argument is without merit."
 
 Riemers v. City of Grand Forks
 
 ,
 
 2006 ND 224
 
 , ¶ 9,
 
 723 N.W.2d 518
 
 (internal quotations omitted). We conclude the juvenile court did not clearly err in finding the legal requirements for terminating J.G.'s parental rights had been satisfied.
 

 IV
 

 [¶30] The juvenile court did not abuse its discretion in denying attorney Gulya's motion for a continuance of the February 8, 2018, termination hearing and did not abuse its discretion in granting his request to withdraw as counsel of record. Additionally, J.G.'s actions during the proceedings were a functional equivalent of a voluntary, knowing, and intelligent waiver of counsel. Finally, J.G. waived her challenge to the juvenile court's determination that her parental rights should be terminated on the
 
 *115
 
 alternative grounds that she abandoned J.J.T. and that there were aggravated circumstances warranting termination.
 

 V
 

 [¶31] We affirm the juvenile court judgment.
 

 [¶32] Jon J. Jensen
 

 Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 Gerald W. VandeWalle, C.J.