2014 ND 72

**John Finstad and Lorie FINSTAD, Plaintiffs and Appellants**

**v.**

**James GORD and Wendy Gord, Beresford Bancorporation, Inc., People's Holding Company, and all other per-**

sons unknown claiming any estate or interest in, or lien or encumbrance upon, the property described in the Complaint, Defendants

**James Gord and Wendy Gord, Appellees.**

No. 20130342.

Supreme Court of North Dakota.

April 8, 2014.

Rehearing Denied May 2, 2014.

Bruce A. Schoenwald, Moorhead, MN, for plaintiffs and appellants.

Michael D. Nelson, West Fargo, N.D., for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] John and Lorie Finstad appeal from a summary judgment declaring James and Wendy Gord owners of farmland in Ransom County, North Dakota. We conclude a quitclaim deed executed by the Finstads and delivered to Beresford Bancorporation and People's Holding Company clearly and unambiguously gave Beresford all of the Finstads' right, title, and interest in the land. We therefore conclude that a subsequent quitclaim deed executed by Beresford to the Gords gave them ownership in the land. We affirm.

I

[¶ 2] The Finstads owned 400 acres of farmland in Ransom County. From 2002 to 2004, Beresford made a number of loans to the Finstads that were secured by the land. In July 2005, after Beresford began foreclosure proceedings on its mortgages, the Finstads filed for bankruptcy under Chapter 12, 11 U.S.C. § 1201 et seq. In October 2005, the Finstads entered into a settlement agreement with Beresford in the bankruptcy proceeding. On January 10, 2006, the parties executed a written version of the October agreement, detailing its terms. The settlement agreement was approved by the bankruptcy court on March 29, 2006.

[¶ 3] Meanwhile, on December 30, 2005, the Finstads executed a quitclaim deed of the land to Beresford ("Finstad–Beresford deed"). The deed was recorded on January 20, 2006. The Finstads say the deed was delivered on December 30, 2005. The Gords say it was delivered on January 13, 2005. Regardless of the day of delivery, the fact that the Finstad–Beresford deed was delivered is not disputed. The effect of the deed, however, is at issue.

[¶ 4] James Gord stated in an affidavit that in the early part of 2006, he became acquainted with John Finstad, who was working on a pipeline crew in Illinois. He stated Finstad told him his daughter had recently died in a car accident and he was in danger of losing his farm in North Dakota. Gord stated in the affidavit that Finstad convinced them to lend him $525,000 to save the farm. Gord said Finstad did not disclose he had already deeded the farm to Beresford, in lieu of foreclosure, through a quitclaim deed. Gord also said he was not aware of a June 2005 appraisal of the Finstad farm made in connection with the Chapter 12 bankruptcy proceeding.

[¶ 5] On March 28, 2006, Beresford sent the Finstads a notice of default of the settlement agreement, stating that they owed $32,698.39 by March 15, 2006, and that the Finstads had 15 days to tender payment or their interest in the land would become null and void. On June 7, 2006, the Finstads issued a $375,000 promissory note to the Gords and entered into an agreement in which the Finstads mortgaged the farm to the Gords in exchange for a $375,000 loan. In addition, the Finstads executed a quitclaim deed of their interests in the farm to the Gords, which was also dated June 7, 2006. In October 2006, the Finstads paid Beresford $345,000 to be applied against their outstanding ob-

ligation. Beresford sent additional notices of default in March 2007, March 2008, and June 2008. In July 2008, Beresford sent the Finstads a "Notice of Termination of Interest in Real Estate and Notice of Intentions to Sell Real Estate by Public Auction." Beresford subsequently began efforts to sell the land.

[¶ 6] Allegedly in response to a suicide threat by John Finstad, Beresford cancelled the planned real estate sale in September 2008. Frank Farrar, president of Beresford, stated in an affidavit that the Gords, who asserted a second mortgage on the land, agreed to pay off the balance owed by the Finstads on the Beresford mortgages, approximately $64,000. As part of that transaction, Farrar stated that Beresford was to execute a quitclaim deed to the Gords. In November 2008, Beresford executed a quitclaim deed of its interest in the land to the Gords ("Beresford–Gord deed").

[¶ 7] In January 2012, the Finstads brought this action against the Gords, Beresford, and all others claiming an interest in the land, seeking quiet title and damages for lost value and waste. The Gords answered and counterclaimed, arguing they owned the land and were defrauded by the Finstads. The Beresford entities answered, alleging they are not proper parties to the action.

[¶ 8] The Finstads moved for summary judgment, arguing they were the sole owners of the land, subject only to a mortgage interest in the Gords. The court granted summary judgment dismissing Beresford. The court denied the Finstads' motion as to the Gords.

[¶ 9] After the court denied the Finstads' motion for summary judgment, the Gords moved for summary judgment. The court granted summary judgment for the Gords, dismissing the Finstads' quiet title action and declaring the Gords owners of the land. The court also dismissed the Gords' counterclaim for fraud.

[¶ 10] The district court had jurisdiction under N.D. Const art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 11] "The standard of review for a district court's grant of summary judgment is de novo. The evidence is reviewed in a light most favorable to the party opposing summary judgment." *Am. Family Ins. v. Waupaca Elevator Co., Inc.*, 2012 ND 13, ¶ 8, 809 N.W.2d 337 (citations omitted). "A party seeking summary judgment bears the initial burden of showing there is no genuine dispute regarding the existence of a material fact." *Tarnavsky v. Rankin*, 2009 ND 149, ¶ 7, 771 N.W.2d 578.

## III

[¶ 12] The Finstads argue the Finstad–Beresford deed was merely a financing vehicle continuing their mortgage relationship rather than an actual change of ownership. They argue the district court improperly excluded evidence of the entire agreement surrounding the quitclaim deed under the parol evidence rule.

[¶ 13] The parol evidence rule is well-established:

The parol evidence rule is a rule of substantive law and precludes use of evidence of prior oral negotiations and agreements to vary the terms expressed in a written contract. The parol evidence rule is codified in N.D.C.C. § 9–06–07, which provides that "[t]he execution of a contract in writing, whether the law requires it to be written or not, supercedes all the oral negotiations or

stipulations concerning its matter which preceded or accompanied the execution of the instrument." A court may consider parol evidence when a written agreement is ambiguous, or when the written agreement does not reflect the parties' intent because of fraud, mistake, or accident. However, "[p]arol evidence cannot vary or contradict the terms of a complete, written contract adopted as a definite expression of the parties' agreement." A decision to admit parol evidence is a question of law, fully reviewable on appeal.

*Myaer v. Nodak Mut. Ins. Co.*, 2012 ND 21, ¶ 20, 812 N.W.2d 345 (citations omitted).

[¶ 14] The Finstads contend the settlement agreement and the evidence surrounding it demonstrate that the Finstads and Beresford really intended to continue their mortgage relationship rather than convey all the Finstads' right, title, and interest in the land to Beresford and that the Finstad–Beresford deed, as part of the larger agreement, merely injects an ambiguity into the overall agreement and parol evidence is admissible to explain the parties' true intent. They argue the parol evidence rule does not bar evidence outside the Finstad–Beresford deed, because the deed and settlement agreement allegedly constitute "a mass of documents and conversations which together constitute the agreement and the parties' intent cannot be clearly ascertained from the written documents alone[.]" *Bye v. Elvick*, 336 N.W.2d 106, 112 (N.D.1983).

[¶ 15] The district court concluded the Finstads did not plead with sufficient particularity that the Finstad–Beresford deed was executed or delivered as a result of fraud, accident, or mistake, or that they were treated unfairly in the transaction. The district court therefore excluded extrinsic evidence outside the language of

the quitclaim deed, stating that even if the Finstads had sufficiently alleged fraud, mistake, accident, or unfairness, they had not presented any admissible evidence sufficient to create a genuine issue of material fact as to the existence of any of those elements in the transaction between the Finstads and Beresford.

[¶ 16] This Court has explained the significance of an executed and delivered deed:

A grant takes effect so as to vest the interest intended to be transferred upon its delivery by the grantor. Section 47–09–06, N.D.C.C. A grant cannot be delivered conditionally but delivery to the grantee is necessarily absolute and the instrument takes effect upon delivery, discharged of any condition on which the delivery was made. Section 47–09–07, N.D.C.C. Thus, where the grantor makes a manual delivery to the grantee of a deed, absolute in form, intending to part with all authority and dominion over the instrument, the delivery is absolute and title passes immediately in accordance with the terms of the deed, notwithstanding any intention or understanding to the contrary between the parties.

*Bolyea v. First Presbyterian Church*, 196 N.W.2d 149, 159–60 (N.D.1972).

■ [¶ 17] " 'When you intend the facts to which the law attaches a consequence, you must abide the consequence whether you intend it or not.' " *Estate of Duemeland*, 528 N.W.2d 369, 371 (N.D. 1995) (quoting *State ex rel. Sathre v. Moodie*, 65 N.D. 340, 358, 258 N.W. 558, 566 (1935)).

■ [¶ 18] On December 30, 2005, the Finstads executed a quitclaim deed of the land to Beresford, the deed was recorded on January 20, 2006, and the parties do not dispute that the Finstad–Beresford deed

was, in fact, delivered to Beresford. The deed states in part, "This conveyance by the [Finstads] to [Beresford] includes all of [the Finstads'] rights, title and interest in and to the real estate, together with any improvements thereon, all dower and homestead rights, all rights of possession, and rental and equity of redemption and all rights of first refusal." Our law states that delivery of a deed is "absolute and the instrument takes effect thereupon[.]" N.D.C.C. § 47–09–07. Because the law attaches a consequence to the unambiguous Finstad–Beresford deed upon its delivery to Beresord, we conclude the deed gave Beresford all of the Finstads' "rights, title and interest in and to the real estate[.]" *See Estate of Duemeland,* 528 N.W.2d at 371; N.D.C.C. § 47–09–07.

[¶ 19] The Finstads rely on *Myers v. Eich,* 2006 SD 69, 720 N.W.2d 76, to argue there was an equitable mortgage on the land. *Myers,* however, is from South Dakota, and the particular elements for an equitable mortgage relied upon in that case are not all present here. *See id.* Although North Dakota also recognizes equitable mortgages, our caselaw usually recognizes an equitable mortgage only between the contracting parties and those having notice that the transaction is a mortgage. *See, e.g., Standorf v. Shockley,* 16 N.D. 73, 111 N.W. 622 (1907) (an instrument will be construed to be an equitable mortgage, and will be enforced as such as between the parties thereto and those having notice thereof); *Myhra v. Rustad,* 58 N.D. 258, 225 N.W. 796, 797–98 (1929) (evidence insufficient to establish that subsequent purchaser was given actual notice of equitable mortgage).

[¶ 20] Generally, when there is a single conveyance and the deed is unambiguous, a third-party purchaser does not have constructive notice of the possibility of other outstanding claims. *See Schulz v.* *Hauck,* 312 N.W.2d 360, 362 (N.D.1981). In this case, because the recorded Finstad–Beresford deed clearly and unambiguously gave Beresford all of the Finstads' rights in the property, the deed did not provide the Gords, a third party to the Finstad–Beresford transactions, with notice of any equitable mortgage between the Finstads and Beresford. As such, construing the unambiguous Finstad–Beresford deed as security in part of a larger equitable mortgage transaction would invade the deed's sanctity and be unfair to the Gords, who are entitled to rely upon the record title. *See Basin Elec. Power Coop. v. Miller,* 310 N.W.2d 715, 718 (N.D.1981) ("[T]he public is entitled to rely upon the record title to property, not the unknown intentions of the individual conveyor of the property.").

[¶ 21] Although the Finstads provided extrinsic evidence indicating the Finstad–Beresford deed was not intended to be an actual transfer of ownership, we conclude extrinsic evidence may not be considered under the parol evidence rule, because the delivered and recorded Finstad–Beresford deed clearly and unambiguously conveyed all of the Finstads' right, title, and interest in the property to Beresford.

IV

[¶ 22] The Finstads also argue they had standing to challenge the Beresford–Gord deed.

[¶ 23] "Standing is a question of law which is reviewed de novo on appeal." *Dakota Res. Council v. Stark Cnty. Bd. of Cnty. Comm'rs,* 2012 ND 114, ¶ 5, 817 N.W.2d 373. "A party is entitled to have a court decide the merits of a dispute only after demonstrating the party has standing to litigate the issues placed before the court. Standing is the concept used to determine if a party is sufficiently affected so as to insure that a justiciable

controversy is presented to the court." *Id.* (quotation and citations omitted).

[¶ 24] "In an action to quiet title to realty, the plaintiff must rely upon the strength of his own title and not upon the weakness of that of his adversary." *Woodland v. Woodland,* 147 N.W.2d 590, 602 (N.D.1966). In denying the Finstads' challenge to the Beresford–Gord deed for lack of standing, the district court cited to N.D.C.C. § 32–17–01, which provides, "An action may be maintained by any person having an estate or an interest in, or lien or encumbrance upon, real property ... for the purpose of determining such adverse estate, interest, lien, or encumbrance." Because we have already concluded the Gords are owners of the land, we hold the district court did not err in deciding that the Finstads do not have any interest in the property and therefore do not have standing to challenge the Beresford–Gord deed.

[¶ 25] The Finstads argue that they adequately alleged and proved mistake or accident in the delivery of the Beresford–Gord deed. Because we have already concluded the Finstads do not have standing to challenge that deed, we do not address this argument.

## V

[¶ 26] We affirm the district court's summary judgment.

[¶ 27] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, LISA FAIR McEVERS, JJ., and WILLIAM A. HERAUF, D.J., concur.

[¶ 28] The Honorable WILLIAM A. HERAUF, District Judge, sitting in place of KAPSNER, J., disqualified.