# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2814
_____

John Finstad; Lorie Finstad,

*Plaintiffs - Appellants*,

v.

Beresford Bancorporation, Inc.; Frank Farrar; James Gord; Wendy Gord,

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: February 11, 2016
Filed: August 5, 2016

_____

Before SMITH and COLLOTON, Circuit Judges, and GRITZNER,[1] District Judge.

_____

COLLOTON, Circuit Judge.

John and Lorie Finstad brought this action alleging Beresford Bancorporation and its president, Frank Farrar, (collectively, "Beresford") breached the terms of an option contract by selling their former farm to James and Wendy Gord. The Finstads

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

also claim that the Gords tortiously interfered with their contract with Beresford. The district court,[2] exercising jurisdiction under 28 U.S.C. § 1332, granted summary judgment in favor of Beresford and the Gords based on the preclusive effect of a prior state-court judgment. *See Finstad v. Gord* (*Finstad I*), 844 N.W.2d 913 (N.D. 2014). We affirm.

## I.

The Finstads owned and operated a farm in Ransom County, North Dakota. Beresford held a secured interest in the farmland as the result of several loans it made to the Finstads between 2002 and 2004. In 2005, Beresford instituted foreclosure proceedings against the Finstads. In response, the Finstads filed for protection under Chapter 12 of the Bankruptcy Code. The foreclosure action was automatically stayed.

In October 2005, the Finstads and Beresford entered into a settlement agreement to remove the farmland from the bankruptcy proceedings. As part of the agreement, the Finstads executed and delivered to Beresford a quitclaim deed, conveying the Finstads' "rights, title and interest in and to the real estate." The settlement permitted the Finstads to remain on the land as tenants and gave the Finstads an option to purchase the property back from Beresford. The option price was the balance of the loans owed to Beresford, plus 8% annual interest and less any lease payments made under the settlement agreement. The Finstads' option was annually renewable through March 15, 2010.

After executing the settlement agreement, the Finstads made payments totaling $438,955.57 to Beresford between December 2005 and April 2008. The majority of that sum was the result of a single, unscheduled payment on October 10, 2006, in the

---

[2]The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota.

amount of $345,000. That payment was financed by a $375,000 loan from the Gords, in exchange for which the Finstads issued the Gords a second mortgage on the farmland.

Beresford sent the Finstads notices of default in March 2007, March 2008, and June 2008. In July 2008, the bank notified the Finstads of its intent to sell the land. Beresford sold its interest in the farmland to the Gords in December 2008 for $64,438.78, the amount that Beresford asserts was remaining on the Finstads' debt. In early 2012, the Gords commenced eviction proceedings, and the Finstads subsequently moved off the property.

In January 2012, the Finstads sued the Gords, Beresford, and another bank holding company in North Dakota state court. In that action, the Finstads alleged that the Finstad-Beresford deed was intended to create an equitable mortgage, not to convey title to the land to Beresford. In support, the Finstads produced a letter from Beresford's president and a title opinion for the local grazing association, describing the Finstad-Beresford deed as a "financing vehicle" that was not intended to effect a change in ownership. Beresford's president also submitted an affidavit stating, "Beresford intended to hold only a mortgage interest in the Finstads' lands and the only interest transferred to the Gords by Beresford was itself a mortgage interest." The Finstads sought to quiet title in the land and asked for a declaration of their ownership of the land, subject to its equitable mortgage to Beresford and actual mortgage to the Gords.

The North Dakota district court dispensed with the Finstads' claims in two separate orders. In October 2012, the court dismissed the claims against Beresford with prejudice, because the bank "has expressly and fully relinquished all claims of a right, title or interest in the subject property." One year later, the court granted summary judgment in favor of the Gords. In this order, the court first found that the Finstad-Beresford deed is "clear and unambiguous on its face," and that parol

evidence was therefore inadmissible to show that the Finstads retained an interest in the property as equitable mortgagors. The court then concluded that the Finstads lacked statutory standing to challenge the Beresford-Gord deed because they did not have an interest in the property and were not persons interested under a deed or writings relating to the property. App. 158 (citing N.D. Cent. Code §§ 32-17-01, 32-23-02). Accordingly, the court dismissed the Finstads' complaint "with prejudice and on the merits." The Finstads appealed only the order granting summary judgment for the Gords, and the North Dakota Supreme Court affirmed. *Finstad I*, 844 N.W.2d at 918-19.

After losing their appeal, the Finstads filed this action in federal court against Beresford and the Gords. They alleged breach of contract and conversion against Beresford, intentional interference with a contract against the Gords, and the "tort of another damages" against all defendants. The claim for tort of another damages, which authorizes attorney's fees in certain tort actions, is dependent on the Finstads prevailing on the other tort claims alleged in the complaint. *Hector v. Metro Ctrs., Inc.*, 498 N.W.2d 113, 122-23 (N.D. 1993); *see* Restatement (Second) of Torts § 914(2) (Am. Law Inst. 1979).

Beresford and the Gords each moved for summary judgment, arguing that the preclusive effect of *Finstad I* barred the federal action. The district court granted both motions. The court first ruled that the doctrine of claim preclusion barred the claims against Beresford because they could have been brought in *Finstad I*. The court then reasoned that the claims against the Gords failed under the doctrine of issue preclusion because the state court necessarily decided that the Finstads did not have an option to buy the farm back from Beresford.

-4-

## II.

The Finstads contend that the district court erred by concluding that their claims were barred by *Finstad I*. Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). North Dakota law therefore controls whether *Finstad I* bars the claims raised in this case. We review the district court's decision *de novo*. *Edwards v. City of Jonesboro*, 645 F.3d 1014, 1019 (8th Cir. 2011).

### A.

We first consider whether the doctrine of claim preclusion bars the Finstads' claims against Beresford. Under North Dakota law, the doctrine of claim preclusion "prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies and which was resolved by final judgment in a court of competent jurisdiction." *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 383 (N.D. 1992). The North Dakota Supreme Court has adopted a four-part test for determining whether claim preclusion applies:

> there must be (1) "a final decision on the merits in the first action by a court of competent jurisdiction," (2) "the same parties, or their privies," in the second action as in the first, (3) an issue in the second action that was "actually litigated" or that "should have been litigated in the first action," and (4) "an identity of the causes of action."

*In re Athens/Alpha Gas Corp.*, 715 F.3d 230, 236 (8th Cir. 2013) (alterations omitted) (quoting *Mo. Breaks, LLC v. Burns*, 791 N.W.2d 33, 39 (N.D. 2010)).

The Finstads argue that the state court's grant of summary judgment in *Finstad I* was not a decision on the merits because the court dismissed for lack of standing. This argument misreads *Finstad I*. Although the court dismissed the claims against the Gords in 2013 for lack of statutory standing, it entered a separate order a year earlier ruling that Beresford has "expressly and fully relinquished all claims of a right, title or interest in the subject property." An element of the Finstads' action to quiet title required them to show that Beresford asserted an adverse property interest. N.D. Cent. Code § 32-17-01; *Dennison v. N.D. Dep't of Human Servs.*, 640 N.W.2d 447, 453 (N.D. 2002). The state court entered summary judgment because the Finstads could not satisfy this element. The claim against Beresford thus failed on the merits.

The Finstads also contend that this federal case does not involve the same parties as *Finstad I*, because the Finstads were not "formally adverse" to Beresford in the state court action. But the Finstads named Beresford as a defendant in state court, and they conceded in the district court that "both suits involve the same parties or those in privity." The Finstads rely on Michigan and Wisconsin law to support a "formally adverse" requirement, but the relevant authorities speak of parties who are "arrayed on opposite sides" of a lawsuit. *See Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 785 (6th Cir. 2004); *U.S. Fid. & Guar. Co. v. Goldblatt Bros.*, 417 N.W.2d 417, 419 (Wis. Ct. App. 1987). The Finstads, as state-court plaintiffs, sued Beresford as a defendant, and sought relief from the bank in *Finstad I*, so the parties were arrayed on opposite sides. We see no basis in the cited authorities or in North Dakota law to conclude that *Finstad I* did not involve the same parties as this case.

In their reply brief, the Finstads assert that Beresford should be judicially estopped from asserting claim preclusion because the bank led them to believe that they retained an equitable-mortgage interest in the land. "Judicial estoppel prohibits a party from assuming inconsistent or contradictory positions during the course of

litigation." *BTA Oil Producers v. MDU Res. Grp., Inc.*, 642 N.W.2d 873, 879 (N.D. 2002). But there is nothing inconsistent between Beresford's position in *Finstad I* (*i.e.*, that it had only a mortgage interest in the farm, which it transferred to the Gords) and its present argument that the Finstads' claims are precluded by the state court judgment.

Finally, the Finstads argue that this case does not raise the same cause of action that was actually litigated in *Finstad I*. Under North Dakota law, however, a prior judgment precludes all claims that "were raised, *or could have been raised*, in prior actions." *Ungar v. N.D. State Univ.*, 721 N.W.2d 16, 20 (N.D. 2006) (emphasis added). By the time they filed their complaint in *Finstad I* in January 2012, the Finstads were aware of all of the material facts alleged in this action, and there was no procedural impediment to the Finstads bringing their breach of contract and conversion claims against Beresford in *Finstad I*. North Dakota law permits a plaintiff to "join, as independent or alternative claims, as many claims as it has against an opposing party," N.D. R. Civ. P. 18(a), and a plaintiff may do so "regardless of consistency." *Id.* R. 8(d)(3). The Finstads therefore could have alleged breach of contract and conversion as contingent claims in *Finstad I*. If the court rejected their primary argument that the Finstad-Beresford deed created an equitable mortgage, then they could have proceeded on their alternative theories. But the Finstads elected not to bring the breach of contract and conversion claims in *Finstad I*, and they are barred from pursuing them in a second action. *See Lucas v. Porter*, 755 N.W.2d 88, 93-94, 96 (N.D. 2008).

B.

The Finstads also contend that the district court erred by granting summary judgment for the Gords based on issue preclusion. Issue preclusion "forecloses relitigation of issues of either fact or law in a second action based on a different claim, which were necessarily litigated, or by logical and necessary implication must have

-7-

been litigated, and decided in the prior action." *Ungar*, 721 N.W.2d at 21. The district court accepted the Finstads' argument that the state court decision dismissing their claims against the Gords for lack of "standing" was not a judgment on the merits, and that claim preclusion therefore does not apply. That issue is not free from doubt, as the state court ordered the claims dismissed "with prejudice and on the merits," and this court has explained that a dismissal for lack of "statutory standing" is a "ruling on the merits." *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1012, 1014 (8th Cir. 2003); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998). But even assuming for the sake of analysis that *Finstad I* did not issue a judgment for the Gords on the merits, "an *issue* actually decided in a non-merits dismissal is given preclusive effect in a subsequent action between the same parties." *Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999); *see* Restatement (Second) of Judgments § 20 cmt. b & illus. 1, § 27 (Am. Law Inst. 1982).

The Finstads allege in this action that the Gords intentionally interfered with their option contract to purchase back the farmland. To prevail on this claim, the Finstads must show that they had a contract with Beresford to purchase the property. *Thimjon Farms P'ship v. First Int'l Bank & Trust*, 837 N.W.2d 327, 333 (N.D. 2013). In dismissing the claims against the Gords, the state court necessarily concluded that the Finstads did not have a contract to purchase the farmland—otherwise, the Finstads would have been permitted to challenge the Beresford-Gord deed. The Finstads incorrectly assert that "[t]he only issue actually litigated in *Finstad I* was the issue of who owned the farm." Although the claims presented in *Finstad I* involved who owned the farm, the state court resolved the case on the ground that "the Finstads do not have any interest in the property." *Finstad I*, 844 N.W.2d at 919. The final resolution of that issue by the North Dakota courts is binding in subsequent litigation between the Finstads and the Gords.

In their reply brief, the Finstads argue that only one of the state district court's two alternative grounds was affirmed by the state supreme court, and that the federal

district court mistakenly relied on a ruling of the state district court that lacked preclusive effect. This contention misconstrues the summary judgment order and supreme court opinion in *Finstad I*. The Finstads brought two claims in *Finstad I*: a quiet title action and a declaratory judgment action. The state district court entered separate conclusions of law on these two claims. First, in ¶ 3(e) of the opinion, the court concluded that the Finstads lacked standing to quiet title because they "had no estate or interest in the real property." *See* N.D. Cent. Code § 32-17-01. Then, in ¶ 3(f), the court ruled that the Finstads lacked standing to seek declaratory relief because they were not "persons interested under a deed or other writings relating to the real property." *See id.* § 32-23-02. These two conclusions were not alternative holdings; each resolved a separate claim in the complaint. Thus, in affirming the grant of summary judgment for the Gords on all claims, the state supreme court affirmed both conclusions. Because the *Finstad I* court necessarily decided that the Finstads lacked a contractual interest in the farmland, the Finstads are barred from relitigating that issue here.

\* \* \*

The judgment of the district court is affirmed.

_____