# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 89

Daniel T. and Debra Ann Bearce,                    Plaintiffs and Appellants

v.

Yellowstone Energy Development, LLC,
Acting By and Through Its Board of Directors,        Defendant and Appellee

No. 20180256

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Joshua B. Rustad, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Jensen, Justice.

Charles L. Neff, Williston, ND, for plaintiffs and appellants.

Kent A. Reierson (argued) and Trevor A. Hunter (on brief), Williston, ND, for defendant and appellee.

**Jensen, Justice.**

[¶1]    Daniel and Debra Bearce ("the Bearces") appeal from a judgment in favor of Yellowstone Energy Development LLC ("Yellowstone") entered following the parties' cross motions for summary judgment.  The Bearces challenge the district court's exclusion of parol evidence to support their allegation of fraud in the inducement.  The Bearces also challenge the district court's conclusion the Bearces were not owed a fiduciary duty.  We affirm the district court's judgment dismissing the Bearces' claim for fraud and their claim for breach of contract.  We reverse the district court's dismissal of the Bearces' claim for breach of a fiduciary duty and remand for further proceedings consistent with this opinion.

I.

[¶2]    In June 2006, representatives of a business entity that would eventually become Yellowstone went to the home of Daniel and Debra Bearce seeking to purchase 170 acres of land owned by the Bearces.  Yellowstone successfully secured an exclusive option to purchase the land.

[¶3]    In 2008, Yellowstone exercised its option to purchase the land and the parties entered into a contract for deed.  In 2009, Yellowstone and the Bearces modified the contract for deed to alter some of the payment terms.  Both the original contract for deed and the 2009 modified contract for deed included the following term providing for the payment of a portion of the purchase price with "shares" of a contemplated ethanol plant:

> In addition to the cash amounts stated above, the Sellers shall receive shares in the Buyer's limited liability company totaling a value of $100,000.00, in the name of the Sellers, <u>to be delivered following financial close of the financing for the Buyer's ethanol plant</u> to be constructed upon the above described real property.

1

(Emphasis added).

[¶4]     Yellowstone subsequently abandoned its plan to build an ethanol plant on the Bearces' land.  Yellowstone then negotiated a long-term lease with a third party to build an oil train loading facility on the Bearces' land.

[¶5]     In July 2010, Yellowstone sent a letter to the Bearces advising them their $100,000 in "value" would be issued despite Yellowstone's abandonment of the plan to build an ethanol plant.  The letter stated ownership units had not yet been issued and explained the Bearces would receive their ownership interest "at the time shares are issued to all its members."  Shortly after receiving that letter, the Bearces executed and delivered a deed for the property to Yellowstone.

[¶6]     In December 2011, the Yellowstone Board of Directors approved a multiplier of three units per $1 invested for individuals who had provided initial cash investment in Yellowstone.  The Bearces' interest in Yellowstone was not given the 3:1 multiplier.  In October 2012, the Yellowstone Board of Directors approved a second multiplier of three units per $1 invested for individuals who had initially provided cash investment in Yellowstone.  The Bearces' interest in Yellowstone was not given the second 3:1 multiplier.

[¶7]     Units representing ownership interest in Yellowstone were allocated and placed on a ledger sometime after December 4, 2012.  After receiving a "unit ledger" indicating their interest in Yellowstone would not receive the 3:1 multiplier, the Bearces objected.  Despite the objection, Yellowstone refused to apply the 3:1 multiplier to the Bearces' interest in Yellowstone.

[¶8]     The Bearces sued Yellowstone asserting claims for breach of fiduciary duty, fraudulent inducement, and breach of contract.  Both parties moved for summary judgment.  The district court denied the Bearces' motion for summary judgment and granted Yellowstone's motion for summary judgment.

[¶9]    On appeal, the Bearces challenge the district court's determination the parol evidence rule precluded communications between the Bearces and Yellowstone from being considered to support their claim asserting they were fraudulently induced into entering into the August 25, 2009 modified contract for deed.  The Bearces also challenge the court's determination that Yellowstone did not breach a fiduciary duty to the Bearces by excluding their equity interest from the 3:1 multiplier.

## II.

[¶10]   The Bearces argue they were fraudulently induced by Yellowstone to enter into the August 25, 2009 modified contract for deed, and therefore the parol evidence rule should not apply to statements made by Yellowstone.  The Bearces assert a Yellowstone representative stated their shares in Yellowstone would be treated the same as the other investors.  The Bearces have not sought to rescind the parties' agreement.  The district court held this statement was barred by the parol evidence rule with respect to the Bearces' claim asserting fraudulent inducement in the August 25, 2009 modified contract for deed.

[¶11]   The decision to admit parol evidence is a question of law, fully reviewable on appeal.  *E.g., Finstad v. Gord*, 2014 ND 72, ¶ 13, 844 N.W.2d 913; *Myaer v. Nodak Mut. Ins. Co.*, 2012 ND 21, ¶ 20, 812 N.W.2d 345.  The parol evidence rule is codified in N.D.C.C. § 9-06-07 and reads:

> The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.

Parol evidence generally cannot be used to vary or contradict the terms of a complete, written contract adopted as a definite expression of the parties' agreement.  *Finstad*, at ¶ 13; *Myaer*, at ¶ 20.  This Court has clarified, however, that parol evidence may be considered when the written agreement does not reflect the parties' intent because of fraud, mistake, or accident.  *Finstad,* at ¶ 13; *Myaer*, at ¶ 20.

[¶12] The Bearces argue Yellowstone's statement that they would be treated the same as other investors fraudulently induced them to enter into the modified contract for deed dated August 25, 2009. Parol evidence of fraudulent inducement is only admissible to challenge the validity of a contract and a corresponding request for the remedy of rescission. *See Golden Eye Res., LLC v. Ganske*, 2014 ND 179, ¶ 17, 853 N.W.2d 544. The Bearces are not seeking recision of the August 25, 2009 modified contract for deed. In the absence of a request to rescind the August 25, 2009 modified contract for deed, the district court properly excluded the parol evidence for the purpose of supporting the Bearces' fraud claim. We affirm the district court's judgment dismissing the Bearces' fraud claim.

### III.

[¶13] The parties' original agreement and the first modification of that agreement required $100,000 of the purchase price to be paid through the issuance of equity in a limited liability company that would be constructing an ethanol plant. In the summer of 2010, Yellowstone informed the Bearces that the ethanol plant would not be built. The district court determined Yellowstone's obligation to pay the $100,000 of equity to the Bearces was a condition precedent, only payable "if" the ethanol plant was financed, and was payable "only upon" the financing of the ethanol plant.

[¶14] The interpretation of a contract is a question of law. *Flaten v. Couture*, 2018 ND 136, ¶ 14, 912 N.W.2d 330. On appeal, this Court independently examines and construes the contract to determine if the district court erred in its interpretation. *Id*.

[¶15] The $100,000 of equity promised to the Bearces represented roughly 16% of the total purchase price for the land. Nothing in the provision related to the payment of the $100,000 of equity expressly provides that in the event the ethanol plant is not built that the Bearces would forego 16% of the purchase price for the property. The provision does not include the contingency language suggested by the district court that the payment was only due "if" financing for the ethanol plant was secured or "only upon" securing financing for the ethanol plant.

4

[¶16]   The district court determined, and the Bearces argue, that securing financing for the ethanol plant was a condition precedent. Section 9-01-11, N.D.C.C., defines a condition precedent:

> A condition precedent is a condition which is to be performed before some right dependent thereon accrues or some act dependent thereon is performed.

Section 9-01-16, N.D.C.C., provides:

> Before any party to an obligation can require another party to perform any act under it, that party shall fulfill all conditions precedent thereto imposed upon that party . . . .

Sections 9-01-11 and 9-01-16, N.D.C.C., recognize parties are free to place conditions precedent on the performance of their respective contractual obligations. *Bishop Ryan High School v. Lindberg*, 370 N.W.2d 726, 729 (N.D. 1985). This Court has recognized that performance of a condition precedent may be a prerequisite to existence of an enforceable contract. *United Bank of Bismarck v. Trout*, 480 N.W.2d 742, 748 (N.D. 1992); *Kruger v. Soreide*, 246 N.W.2d 764, 769 (N.D. 1976); *Quinn Distrib. Co. v. North Hill Bowl, Inc.*, 139 N.W.2d 860, 863-64 (N.D. 1966).

[¶17]   Although our prior caselaw discussing conditions precedent has primarily dealt with whether the failure of a condition precedent prevented the existence of an enforceable contract, the failure of a condition precedent does not preclude the parties from continuing with their agreement. A condition precedent may be waived "either expressly or by implication resulting from acts or conduct, by the party in whose favor they are made." *Wachter v. Gratech Co.,* Ltd., 2000 ND 62, ¶ 22, 608 N.W.2d 279. Additionally, parties may enter into an accord when one party is willing to "accept in extinction of an obligation something different from or less than that to which the person agreeing to accept is entitled." N.D.C.C. § 9-13-04. Similarly, the parties may enter into a novation and substitute a new obligation for an existing one. N.D.C.C. § 9-13-08. *See Herb Hill Ins., Inc. v. Radtke*, 380 N.W.2d 651, 654 (N.D. 1986) (comparing the legal theories of novation and accord).

5

[¶18]   Here, the parties agreed to continue with the sale of the real property to Yellowstone after disclosure to the Bearces that the ethanol plant would not be built. The Bearces unambiguously expressed their agreement to continue with the sale of the real property by executing and delivering a deed to Yellowstone.  Yellowstone unambiguously agreed to continue by accepting the deed and not demanding a return of the prior cash payments made to the Bearces.  Despite the failure of the condition precedent, the parties agreed to continue with the sale of the land from the Bearces to Yellowstone.

[¶19]   While the parties' agreement to continue with the sale and purchase of the land is clear, Yellowstone's obligation(s) following the decision not to build the ethanol plant is not certain.  Prior to the Bearces' transfer of the real property to Yellowstone, the Bearces received the July 2010 letter informing them they would still receive their shares "at the time shares are issued to all its members," even though the ethanol plant was not being built.  The Bearces argue the July 2010 letter represents the substituted conditions under which they agreed to continue with the agreement—a novation. Yellowstone argues the Bearces continued with the agreement by accepting less than they had originally been entitled—an accord.  The district court's determination that the payment of $100,000 was conditional or a contingency and its conclusion that the Bearces were not entitled to any equity payment, is effectively the same as Yellowstone's argument there was an accord which provided the Bearces would accept less than they were originally entitled.

[¶20]   We have previously recognized that "[u]nless the evidence in a case is such that reasonable persons can draw but one conclusion, the question whether or not there has been an accord and satisfaction is a question of fact."  *Herb Hill*, 380 N.W.2d at 654 (citing *Shirazi v. United Overseas, Inc.*, 354 N.W.2d 651, 654 (N.D. 1984); *Hall GMC, Inc. v. Crane Carrier Co.*, 332 N.W.2d 54, 61 (N.D. 1983)). "Likewise, the question of whether or not there has been a novation is a question of fact if the evidence is such that reasonable persons can draw more than one

6

conclusion." *Id*. (citing *Navine v. Peltier*, 48 Wis.2d 588, 180 N.W.2d 613, 616 (1970); *Hyde v. Hyde*, 78 S.D. 176, 99 N.W.2d 788, 791-92 (1959)). Both parties have presented reasonable explanations of the terms of their continuing agreement following the disclosure that the ethanol plant would not be built. Because reasonable persons can draw more than one conclusion, the entry of summary judgment was not appropriate and this case must be remanded for a determination of the terms under which the parties agreed to continue their agreement. Questions of fact remain regarding the terms, if any, of the parties' agreement to continue the transaction following the disclosure that the ethanol plant would not be built and whether the parties each satisfied those terms.

IV.

[¶21] The Bearces argue the district court erred, as a matter of law, in determining Yellowstone did not breach a fiduciary duty to the Bearces when Yellowstone multiplied the investment of initial cash investors by three, but did not multiply the Bearces' interest in Yellowstone by three. They argue that as a result, their ownership interest was improperly diluted. The Bearces' challenge is limited to the court's determination that no dilution had occurred. The Bearces' argument is dependent upon the contract for deed having been completed and a subsequent fiduciary duty arising from their ownership of an interest in Yellowstone.

[¶22] The timing of the events is undisputed. A deed was delivered to Yellowstone on August 3, 2010. In December 2011 and October 2012, the Yellowstone Board of Directors approved the 3:1 multiplier for the initial and additional cash investors. In December 2012, the units representing ownership interests in Yellowstone were allocated. Upon allocation of the units, the cash investors received three units for every dollar they invested and the Bearces received one unit for each dollar of the $100,000 in value they were to be paid under the terms of the contract for deed.

[¶23] The district court determined the contract for deed was unambiguous, and it did not require payment of the $100,000 of value in Yellowstone until allocation of

7

the units in December 2012. The interpretation of a contract is a question of law. *Flaten*, 2018 ND 136, ¶ 14, 912 N.W.2d 330. On appeal, this Court independently examines and construes the contract to determine if the district court erred in its interpretation. *Id*.

[¶24] Although referenced as "shares" rather than "units," the ownership interests in Yellowstone were ultimately distributed as units of a limited liability company. The contract for deed expressly sets the date of the payment of the units as the "financial close of the financing for the Buyer's ethanol plant." However, because of the failure of the condition precedent, that event never occurred and will never occur.

[¶25] The Bearces argue Yellowstone's purchase of the property was completed on August 3, 2010, when they executed a deed transferring the property to Yellowstone, and their investment in Yellowstone vested at that time. The Bearces further contend that because their interest had vested, the subsequent application of the multipliers to cash investors diluted their interest in Yellowstone. That is a reasonable interpretation and is supported by the district court's finding of fact which provides that "Yellowstone Energy completed the purchase of the Subject Property on August 3, 2010."

[¶26] In contrast, the district court, relying in part on the language of the failed condition precedent, implicitly concludes that December 2012, when the units were issued, was the date the payment of the units to the Bearces was made. The court thereafter concludes the simultaneous issuance of units precludes a finding that the Bearces' interest was diluted. That is also a reasonable interpretation of the parties' agreement following the failure of the condition precedent.

[¶27] The district court's interpretation is reasonable. However, the Bearces' interpretation is also reasonable. "[A] contract is ambiguous when reasonable arguments can be made for different positions on its meaning." *Moen v. Meidinger*, 547 N.W.2d 544, 547 (N.D. 1996). Because there are two reasonable interpretations

8

of when the payment of the units was to be made following the failure of the condition precedent, the terms for continuation of the contract for deed were ambiguous.

[¶28]   We do not know what conclusion the district court would have made regarding dilution if it were to conclude the payment of the units to the Bearces occurred on August 3, 2010.  While the court properly excluded parol evidence with regard to the Bearces' allegation of fraud, that evidence may be considered when the written agreement does not reflect the parties' intent because of ambiguity. *Finstad*, 2014 ND 72, ¶ 13, 844 N.W.2d 913; *Myaer*, 2012 ND 21, ¶ 20, 812 N.W.2d 345.  In light of the ambiguity in the parties' agreement following the parties' continuation of the contract for deed after the failure of the condition precedent, on remand, it will be appropriate for the district court to consider extrinsic evidence in determining when the payment of the Bearces' interest in Yellowstone was made; what, if any, fiduciary duty would have arisen if the payment was made in August 2010; and whether any existing fiduciary duty would have been breached by application of the multipliers to only cash investors.

V.

[¶29]   In their complaint, the Bearces alleged that Yellowstone had breached provisions of its proposed bylaws and member control agreement.  The district court's judgment dismissed the Bearces' claim for breach of contract.  The Bearces did not brief or otherwise challenge the court's dismissal of their breach of contract claim.  The Bearces waived, on appeal, any issue regarding the breach of contract claim by not providing supporting argument and, without supportive reasoning or citations to relevant authorities, an argument is without merit. *Interest of J.J.T.*, 2018 ND 165, ¶ 29, 915 N.W.2d 106.

VI.

[¶30]   The district court's exclusion of parol evidence regarding the Bearces' allegation of fraud in the inducement was correct, and we affirm the district court's

9

judgment dismissing the Bearces' claim for fraud. The Bearces waived any issue regarding their breach of contract claim, and we affirm the district court's judgment dismissing the Bearces' breach of contract claim. The district court erred in its determination that the contract for deed was unambiguous with regard to the parties' obligations after the failure of the condition precedent. We reverse and remand for further proceedings to determine when the Bearces acquired their interest in Yellowstone and, if that interest was acquired in August 2010, whether a fiduciary duty was owed to the Bearces, and if so, whether the fiduciary duty was breached in the subsequent 3:1 multiplier for cash investments.

[¶31]   Jon J. Jensen
         Daniel J. Crothers
         Jerod E. Tufte
         William A. Neumann, S.J.
         Gerald W. VandeWalle, C.J.


[¶32]   The Honorable William A. Neumann, S.J., sitting in place of McEvers, J., disqualified.