# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-1857
_____

In re: John N. Finstad; Lorie Finstad

*Debtor*s

------------------------------

John N. Finstad; Lorie Finstad

*Appellant*s

v.

James Gord; Wendy Gord

*Appellee*s
_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit
_____

Submitted: February 18, 2021
Filed: July 21, 2021
_____

Before LOKEN, BENTON, and KELLY, Circuit Judges.
_____

LOKEN, Circuit Judge.

This appeal is the latest chapter in a dispute between John & Lorie Finstad and James & Wendy Gord over the ownership of farmland in Ransom County, North Dakota. In 2005, secured creditor Beresford Bancorporation, Inc., filed foreclosure proceedings against the farm, then owned by the Finstads. They responded by filing for protection under Chapter 12 of the Bankruptcy Code, staying the foreclosure proceedings. As part of an October 2005 settlement to remove the farmland from the bankruptcy proceedings, the Finstads delivered to Beresford a quitclaim deed conveying their "rights, title and interest in and to the real estate," but permitting the Finstads to remain on the land as tenants with an option to purchase at a price equal to the balance of the loans owed to Beresford plus interest. Beresford recorded the deed in January 2006. In the spring of 2006, the Gords loaned the Finstads $525,000 in exchange for a second mortgage on the farm, allegedly without knowledge of the quitclaim deed to Beresford. The Bankruptcy Court approved the Finstads' settlement with Beresford, confirmed their Chapter 12 plan, and later granted them a Chapter 12 discharge. In July 2008, Beresford sent the Finstads notices of default under the settlement agreement and a notice of intent to sell the farm. In December, Beresford sold its interest in the farm to the Gords, delivering them a quitclaim deed. The Gords initiated eviction proceedings against the Finstads as tenants under the Beresford deed.

In January 2012, the Finstads brought an action against Beresford and the Gords in North Dakota state court. The Finstads alleged that their quitclaim deed to Beresford was intended to create an equitable mortgage, not to convey title, and sought a declaration that they own the land subject to an equitable mortgage to Beresford and the second mortgage to the Gords. The trial court ruled against the Finstads. The Supreme Court of North Dakota affirmed concluding, *inter alia*, that "the delivered and recorded Finstad-Beresford deed clearly and unambiguously conveyed all of the Finstads' right, title, and interest in the property to Beresford." Finstad v. Gord, 844 N.W.2d 913, 918 (N.D. 2014) (Finstad I). The Finstads then filed a diversity action in the District of North Dakota, alleging breach of contract and

conversion against Beresford, intentional interference with contract against the Gords, and the "tort of another damages" against all defendants. The district court granted summary judgment dismissing all claims. We affirmed, concluding the state court decision that the Finstads "'do not have any interest in the property' . . . is binding in subsequent litigation between the Finstads and the Gords" and "necessarily decided that the Finstads lacked a contractual interest in the farmland" with which the Gords could have interfered. Finstad v. Beresford Bancorporation, Inc., 831 F.3d 1009, 1015 (8th Cir. 2016) (Finstad II).

Two years later, the Finstads moved to reopen the Chapter 12 bankruptcy case. After the bankruptcy court[1] granted the motion, the Finstads filed this adversary action, see 28 U.S.C. § 157(b), asserting a variety of claims each of which is dependent on their primary claim that they hold legal and equitable title to the farm. Subject matter jurisdiction here is based on the Bankruptcy Code. See 28 U.S.C. § 1334. In support of this claim, the Finstads allege that the quitclaim deed to Beresford merged into their confirmed Chapter 12 Plan; that the intent of the parties to the deed was an equitable mortgage, not a conveyance of title; that the bankruptcy court has authority under 11 U.S.C. § 105 to reform the deed to reflect that intent; and that the Bankruptcy Code preempts any contrary state law, such as the North Dakota parol evidence rule on which Finstad I relied, codified at N.D. Cent. Code § 9-06-07.[2]

---

[1]The Honorable Shon Hastings, Chief United States Bankruptcy Judge for the District of North Dakota.

[2]The Finstads overstate the significance the Supreme Court of North Dakota placed on the parol evidence rule statute. The core of the decision in Finstad I was the Court's conclusion that "construing the unambiguous Finstad-Beresford deed as security in part of a larger equitable mortgage transaction would invade the deed's sanctity and be unfair to the Gords, who are entitled to rely upon the record title." 844 N.W.2d at 918.

The bankruptcy court rejected these arguments and dismissed the complaint on multiple grounds. The Finstads appealed to the Bankruptcy Appellate Panel (B.A.P.) which affirmed, also on multiple grounds. In re Finstad, 613 B.R. 180 (8th Cir. B.A.P. 2020). This appeal followed. As a second reviewing court, we independently review the bankruptcy court's decision, applying the same standards of review as the B.A.P. Findings of fact are reviewed for clear error and legal conclusions *de novo*. See, e.g., In re Wigley, 951 F.3d 967, 970 (8th Cir. 2020).

The B.A.P. affirmed the bankruptcy court on alternative grounds. We need consider only one to decide this appeal -- looking to North Dakota preclusion law for the federal common law principles of issue preclusion applicable in this case, we conclude that our decision in Finstad II that the Finstads "do not have any interest in the property" was an issue actually litigated in a prior suit between the parties that is binding on the Finstads in this lawsuit. Accordingly, we affirm.

**I.**

*Res judicata* is a broad term often used to describe the more modern terms claim preclusion and issue preclusion. The Full Faith and Credit Clause, U.S. Const. Art. IV, § 1, and the full faith and credit statute, 28 U.S.C. § 1738, govern the *res judicata* effects to be given *state* court judgments. But "no federal textual provision addresses the claim-preclusive effect of a federal-court judgment in a federal-question case," so that is an issue of federal common law. Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497, 507 (2001); see Rick v. Wyeth, Inc., 662 F.3d 1067, 1069 (8th Cir. 2011), cert. denied, 566 U.S. 906 (2012). Likewise, "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." Semtek, 531 U.S. at 508. Thus, federal common law governs the preclusive effect of Finstad II, a federal diversity action.

-4-

In Heiser v. Woodruff, the Supreme Court held that "in non-diversity cases . . . the federal courts will apply their own rule of *res judicata.*"  327 U.S. 726, 733 (1946).  Recognizing "the salutary principle of *res judicata*," the Court held that where the debtor or the trustee in a federal bankruptcy case had unsuccessfully litigated an issue in *federal* court outside the bankruptcy proceeding, "the decision against him is binding in the bankruptcy court."  Id. at 731, 733-34.  In applying that principle, when the trustee or the debtor relied on substantive state law for its claim in the subsequent bankruptcy case, we looked to the claim and issue preclusion law of that State to determine the preclusive effect of a prior adverse *state* court judgment in In re Athens/Alpha Gas Corp., 715 F.3d 230, 238 (8th Cir. 2013), and in In re Marlar, 267 F.3d 749, 753-54 (8th Cir. 2001).  Accord In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig., 999 F.3d 534, 537-38 (8th Cir. 2021).  We see no reason not to look to North Dakota preclusion law to determine the preclusive effect of the prior *federal* court decision in Finstad II.  See Semtek, 531 U.S. at 508 (choosing state law as the federal rule of decision).

## II.

Under North Dakota law, "collateral estoppel, or issue preclusion, generally forecloses the relitigation, in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit."  Hofsommer v. Hofsommer Excavating, Inc., 488 N.W.2d 380, 383 (N.D. 1992).  The Supreme Court of North Dakota requires that four tests be met before collateral estoppel will bar relitigation of an issue:

(1) Was the issue decided in the prior adjudication identical to the one presented in the action in question?;  (2) Was there a final judgment on the merits?; (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?; and (4) Was the

party against whom the plea is asserted given a fair opportunity to be heard on the issue?

Id. at 384.  Here, our decision in Finstad II obviously meets these four tests.  First, although the Finstads asserted additional claims for relief, their primary claim in this case, as well as their intentional interference with contract claim against the Gords in Finstad II, was based on the same issue -- "the FINSTADS are entitled to a declaration from this Court that they hold legal title to the Farmland."  Adversary Complaint par. 45.  Second, our decision in Finstad II was a final judgment on the merits.  Third, the Finstads and Gords were parties to that prior adjudication.  And fourth, the Finstads had a fair opportunity to be heard, and were heard on this issue in Finstad II.

The Finstads main brief on appeal did not argue the issues of claim and issue preclusion on which the bankruptcy court and the B.A.P. relied.  Rather, they argued (i) federal law preempted the state court decision in Finstad I because it conflicted with their Chapter 12 Plan, (ii) the quitclaim deed was contrary to the intent of the parties in the settlement agreement and therefore ineffective, and (iii) the bankruptcy court has authority to reform the deed.  When the Gords argued in their brief that the bankruptcy court correctly determined the four elements of issue preclusion are satisfied, the Finstads' Reply Brief argued that Finstad I "is void because it . . . allows consideration of state law that conflicts with the FINSTAD's Confirmed Chapter 12 Plan of discharge under federal bankruptcy law," and therefore issue preclusion does not apply.  Whether Finstad II has issue preclusive effect was not addressed by the Finstads in either brief; they appeared to concede at oral argument that their appeal fails if it does.

For issue preclusion to apply, the question is whether the Finstads' claim of farm ownership was an issue that was "necessarily litigated, or by logical and necessary implication must have been litigated, and decided in the prior action."

Finstad II, 831 F.3d at 1014, quoting Ungar v. N.D. State Univ., 721 N.W.2d 16, 21 (N.D. 2006). In Finstad I, the Supreme Court of North Dakota affirmed the trial court's grant of summary judgment dismissing the Finstads' quiet title action "with prejudice and on the merits," concluding the Gords owned the property. In Finstad II, that issue was again litigated to final judgment. Applying the full faith and credit statute, we resolved the issue by concluding that the state court decision in Finstad I -- "the Finstads do not have any interest in the property" -- "is binding in subsequent litigation between the Finstads and the Gords." 831 F.3d at 1015.

The facts on which the Finstads rely for their assertion in this case that Finstad I was "void" and preempted by federal law because it conflicts with their confirmed Chapter 12 Plan were known long before they filed their action in Finstad II in 2014. "[R]es judicata and collateral estoppel apply even though the subsequent claims may be based upon a different legal theory." Simpson v. Chi. Pneumatic Tool Co., 693 N.W.2d 612, 617 (N.D. 2005). Therefore, even if, hypothetically, the Finstads could collaterally attack the state court's farm ownership decision in Finstad I in this action, our resolution of that issue in Finstad II is binding on the Finstads in this action under federal common law, applying North Dakota issue preclusion law.

For these reasons, the judgment of the B.A.P. is affirmed.[3]

———————————————

———————————————

[3]The B.A.P. alternatively upheld the bankruptcy court's conclusion that the Rooker-Feldman doctrine bars the Finstads' claims because they seek to overturn the state court decision in Finstad I. Although we address Article III jurisdictional questions before non-jurisdictional issues such as *res judicata*, we may "bypass Rooker-Feldman to reach a preclusion question that disposes of a case" because it is a rule of statutory, not Article III jurisdiction. In re Athens/Alpha, 715 F.3d at 235.